### VAN EPPS and wife *vs.* VAN DEUSEN, executor, &c.

If the father of an infant child, without authority, receives or takes possession of the property of the infant, he will, in equity, be considered as the guardian of the infant, and may be compelled to account as such ; and the rule is the same where a mere stranger or wrongdoer takes possession of the property of an infant and receives the rents and profits thereof.

Whether loose declarations of the father as to the receipt of money belonging to his daughter will revive the cause of action for the same, after a lapse of 25 years from the time the legal right of the husband to recover the money had accrued. Quere.

Where a testator, by his will, after giving his estate to his four children, directed that all his debts should be borne and paid equally by such children, *it was held,* that one of the daughters could not file a bill against the executor of her father to recover a demand she had against the estate, without first relinquishing all benefit to which she was entitled under the will, or bringing the other children, who were bound to contribute towards the payment of the debt, before the court as parties.

An assignment by the husband, under the insolvent laws, vests in the assignee the personal estate of the wife in action, unless the same is secured to her as her separate property. But the assignee takes the legal interest subject to the wife's right by survivorship, if the husband dies before the assignee has reduced such property to possession.

The assignee also takes the assignment of the wife's estate, subject to her equitable claim thereon for the support of herself and infant children, if she has no other sufficient means for that purpose ; provided she asserts her claim or institutes a suit in chancery for the recovery of such estate before the assignee has reduced it into possession.

Upon a bill filed by the wife, chancery will interpose to restrain the husband or his assignee from proceeding at law to possess themselves of her property in action, and will compel them to allow her a suitable provision out of the same for her support.

Where the defendant either by plea, demurrer or answer, distinctly takes the objection of the want of proper parties, the complainant should at once amend his bill by bringing in the necessary parties, before any further proceedings are had in the cause.

And if he neglects to do this, it will be in the discretion of the court, at the hearing, either to permit the cause to stand over, upon payment of costs, to enable the complainant to bring the proper parties before the court, or to dismiss the bill with costs.

If the defendant does not take the objection of the want of proper parties until the hearing, the complainant will be allowed a reasonable time to bring the proper parties before the court, either by an amendment of the original bill, or by a supplemental bill ; unless it should appear that the necessary parties were omitted in the bill, by the fraudulent or wilful omission, or the bad faith of the complainant.

1833.

Van Epps
v.
Van Deusen.

January 25.

Where a bill is dismissed at the hearing for want of proper parties, it should be without prejudice to the right or claim of the complainant in any future litigation.

THE complainants filed their bill in this cause, in January, 1829, against the defendant, as the sole acting executor of Harpert Van Deusen, the elder, to recover the value of a certain female slave, and the proceeds of a bond which were bequeathed to Mrs. Van Epps, one of the complainants, by her aunt Maritie Witbeck. The complainants alleged, in their bill, that M. Witbeck, who died in 1787, by her will bequeathed to Mrs. Van Epps, then an infant, a female slave named Ann, together with the money due on a bond held by the testatrix, against M. Van Deusen, the grandfather of the defendant, and of Mrs. Van Epps who is his sister of the half blood. That H. Van Deusen, the elder, as the father and natural guardian of Mrs. Van Epps, about thirty-two years previous to the filing of the bill, and when she was about 14 years of age, received of her grandfather the money due on the bond ; and that he also took into his possession the female slave, and received her services and her wages until she died at the age of twenty-four or twenty-five years. That Mrs. Van Epps continued to live with her father until the age of 20 ; when she married Evert Van Epps, her present husband. That the complainants frequently called upon H. Van Deusen, the elder, in his lifetime, to pay the amount received by him on the bond, and to compensate them for the black girl ; and that within a year before his death, he promised them to pay the same. That he died in 1827, having previously made his will and appointed the defendant and others his executors. That the defendant alone made probate of the will ; and that he had received assets more than sufficient to pay all the debts of the testator. And that the complainants had called upon the defendant as executor to pay the amount received by the testator on the bond, and the value of the black girl ; but that he had refused to pay the same. The complainants prayed an account, and for payment of what was due to them out of the estate of the testator in the hands of the executor.

By the answer of the defendant, he denied all knowledge, information and belief as to the existence of the supposed legacies from Maritie Witbeck to Mrs. Van Epps, or that his testator ever received the money on the bond, or had possession of the slave, as the natural guardian of Mrs. Van Epps, or otherwise ; or that the testator ever promised to pay the complainants any thing on account of any such claim. The defendant admitted that the testator died in November, 1827 ; and that by his will he devised to his daughter, Mrs. Van Epps, all his real estate in the county of Rensselaer, consisting of a farm, worth at least $3000; and that he gave to his two daughters, Margaret and Getty, legacies of $1000 each ; and to his widow gave certain personal property for life, and after her death to the defendant and to his two last mentioned daughters. And that after giving a few other legacies of trifling amount to Mrs. Van Epps and others, he devised and bequeathed the residue of his estate to the defendant. , The defendant also alleged that by the will of the testator, Mrs. Van Epps and the defendant, and their two sisters, Margaret and Getty, were each required to bear and pay an equal share, or one fourth part, of all claims and debts that should be claimed, or obtained from, or paid by the executors. He therefore insisted, by his answer, that if the complainants had any just claim against the estate of the testator, they were not entitled to claim it against his personal representative without first relinquishing all claim to the estate of the testator under the will ; or at least, that the defendant was only bound to pay one fourth of the amount due. He also insisted that the two sisters, who by the will were bound to contribute, were necessary parties to the suit ; and he claimed the benefit of the objection, of the non-joinder of them as parties, in the same manner as if he had pleaded or demurred. The defendant, in his answer, further stated, that, after the alleged indebtedness of the testator had accrued, the complainant, Evert Van Epps, was discharged under the insolvent act of April, 1813, and made an assignment of all his property to John S. Miller for the benefit of his creditors. The defendant, therefore, insisted that if the complainants had any claim or demand against the testator at the time of the said assignment, for or on account of any of the matters set forth

in their bill, such claim and demand passed to and became ves-
ted in Miller, the assignee, who was a necessary party to the
suit. And the defendant prayed the benefit of the objection in
the same manner as if he had plead the same in bar. A
replication was filed to the answer ; and testimony was taken
in the cause. The complainants gave in evidence the will of
Maritie Witbeck, bequeathing the bond and female slave to
Mrs. Van Epps ; and gave other evidence from which it ap-
peared probable that Harpert Van Deusen, the elder, had ei-
ther received the money on the bond, or had been credited
with it on the purchase of his father's farm ; and that he had
the services of the black girl, after the termination of her in-
dentures to P. Hilton, in 1797, until her death, about the time
of the marriage of Mrs. Van Epps. The defendant gave in
evidence the will of his father, by which the farm in Rensse-
laer county was devised to Mrs. Van Epps, and she and the
two other sisters were each charged with the payment of one
fourth of the debts due from the estate of the decedent. Evi-
dence was introduced for the purpose of showing that the farm
had been originally " booked" by the patroon to the maternal
grandfather of Mrs. Van Epps ; and that it belonged to her in
equity, although her father, after his intermarriage with her
mother, had obtained a lease thereof in fee, in his own name.
The defendant also gave in evidence the insolvent proceedings
in the case of Evert Van Epps ; from which it appeared that
Van Epps was discharged under the insolvent act, in 1816,
and assigned his estate to Miller, as stated in the answer.
The cause was heard upon the pleadings and proofs.

*J. L'Amoureux,* for the complainants. The testator was li-
able to the complainant, Nancy Van Epps, for the services of
the slave and the money received by him on the bond ; the
same having been received by him as the natural guardian
of his daughter. (*Grimke* v. *Executors of Grimke,* 1 *Desaus.
Equity Rep.* 366. 2 *Wendell's Rep.* 153.) The right of Mrs.
Van Epps to this demand against her father, did not pass
under the assignment executed by her husband when he re-
ceived his insolvent discharge. She had an equity in the

money received and the value of the slave, which was not affected by the discharge, and could not pass by the assignment under the act. (3 *Petersdorf*, 403, 404, *N. Y. ed.*, and the notes and cases there cited. 5 *John. Ch. Rep.* 464. 6 *Id.* 25, 178. *Mumford and others* v. *Murray,* 1 *Paige's Ch. Rep.* 620. *Smith* v. *Kane,* 2 *Id.* 303.) It was not necessary to make the other legatees parties to the suit, as the personal property is the proper fund out of which the debts are to be paid, and the executors alone represent that fund ; and as the testator intended his executors should first pay the debts, and the personal property is abundantly sufficient for that purpose. (2 *John. Ch. Rep.* 623, 628. 3 *Id.* 553. 1 *Id.* 349, 437.) It is not necessary for the complainants to relinquish their claim to the legacy and devise under the testator's will to entitle them to recover this demand. The will expressly provides for the payment of all the debts ; and a legacy or a devise is not an extinguishment of a debt, unless so expressed by the will, or the intent of the testator to that effect is clearly inferrible from it. (2 *Mad. Ch.* 41, 42, and cases there cited. 5 *Cowen's Rep.* 370. 4 *Wendell,* 443. *Matthews on Presump. Ev.* 111, 112, &c.) The statute of limitations does not apply to trust property ; and, besides, the testator promised within six months of his death to pay this demand. There can be no off-set for rents in this case, as the real estate came through the grandfather of Mrs. Van Epps, on her mother's side ; and the deed, instead of being taken to the father, ought to have been taken to the mother of Nancy ; so that on the death of the father, who would have had an estate by the curtesy, the farm would come to Mrs. Van Epps. The defendant cannot make a charge against the complainants for the support, education, &c. of Mrs. Van Epps. This the testator was bound to do, without giving him any claim upon the money paid on the bond or the value of the slave. (1 *Mad. Ch.* 343. 3 *Atk.* 399.)

*Daniel Cady,* for the defendant. The complainants' demand rests on the assumption that the testator had in his life-time, and at the time of the marriage between the complainants, money in his hands which belonged to the wife before

marriage. If this assumption be founded in truth, then, on the marriage, the money belonged to the husband, and he could have maintained an action at law in his own name to recover it, or he could have released or discharged all claim therefor. (*Schuyler* v. *Hugh*, 5 *John. Ch. Rep.* 207.) More than twenty-five years have elapsed since the marriage, and the demand ought not at this day to be enforced.

This demand, if it ever existed, passed to the assignees of Evert Van Epps when he obtained his insolvent discharge; and they only can sustain an action for it. A general assignment in bankruptcy passes all the interest of the husband in the property of the wife, subject to her right of survivorship. (2 *Kent's Com.* 116.) Van Epps, upon the application for his discharge, inserted in his inventory no demand against the testator. It is only when the husband or his assignee is compelled to resort to a court of equity to get possession of the estate of the wife, that the wife can claim to have a provision made for her. In this case an ample provision is made for the wife in the real estate devised to her. (2 *Atkins*, 434, 420. 5 *John. Ch. Rep.* 208. 2 *Id.* 206.)

The complainants have not brought the necessary and proper parties before the court. The testator by his will disposed of all his real and personal estate; nothing was left in the hands of the executor which was not expressly bequeathed. No debts can therefore be paid, without diminishing the bounty intended by the testator for his legatees. The testator had a perfect right to bequeath and devise his estate to whom he pleased, and to impose upon the legatee or devisee such burthen as he thought proper. The legatee or devisee is left at liberty to refuse the legacy and devise, or accept them with the burthen imposed by the testator. A mere creditor of the testator, who claimed nothing under the will, might undoubtedly sue the executor, who would be compelled to pay and then seek a remedy against his co-legatees. (*Mitford's Pl.* 39, 144.) One leading object of a court of equity is to put an end to litigation; and for that purpose the court requires that all parties interested in the subject matter of the suit be made parties. Margaret and Getty are each bound to pay one fourth part of the debt, if any be due to the complainants from the

testator.  Margaret and Getty, therefore, have a direct interest in the ascertainment of the amount of that debt, and ought not to be concluded by any proceedings to which they are not parties.  Nor ought the complainants to be allowed to sustain three several bills against their three co-legatees, in each of which suits the same matters are to be litigated and the same proofs required.

The complainants claim and hold a large real and personal estate under the will; they are not therefore at liberty to set up a claim as creditors, to the prejudice of the other legatees. It is the settled doctrine of a court of equity, and agreed on all sides that no man shall be allowed to disappoint a will under which he takes a benefit.  (1 *Ves. jun.* 523.  9 *Ves.* 534.) Did the testator intend to have his daughters Margaret and Getty exposed to have the legacy of $1000 bequeathed to each of them, taken to pay a debt due from him to his daughter Nancy, to whom he had bequeathed and devised more than $3000 ?  No person can for a moment suppose that the testator intended that it should be in the power of one of the legatees to defeat the legacy intended by him for another. The pretence that the farm which the testator devised to Nancy belonged to her maternal grandfather, is without even a plausible foundation.

If the declarations of the testator amount to a promise to pay this demand, the promise was without consideration.  If the testator at that time was indebted on account of the bond and slave mentioned in the complainants' bill, he was indebted not to them, but to the assignee of Evert Van Epps as an insolvent.  A debt due to the assignee would be no consideration for a promise to pay to the insolvent himself; nor can the declarations of the testator, although made after he had executed his will, alter the effect of the will, or give to the complainants a right to hold under it, and disappoint the other legatees.

THE CHANCELLOR.  From the testimony in this case, there is very little doubt that Harpert Van Deusen, the elder, between 40 and 50 years since, received a certain sum of mon-

ey, the precise amount of which cannot now be ascertained, and that this money then belonged to his infant daughter. It also appears that he took home the black girl, after the expiration of her indenture, in 1797, and had the benefit of her services until her death. Although, as the mere guardian by nature, he had no right to receive the money due on the bond, or to receive the services of the slave, yet this court will hold him liable to the same extent as if he had been the legally constituted guardian, so far as he has had the benefit of the infant's property. A mere stranger, or wrongdoer, who takes possession of the property of an infant, and receives the rents and profits thereof, may, in equity, be considered as the guardian of the infant, and may be compelled to account as such. (1 *West's Rep.* 265. 2 *Peer Wm's,* 645. 1 *Vern.* 296. 2 *Car. Law Repos.* 412.) The father however could not be charged with the value of the slave, but only with the net profits of her labor received by him, over and above the expenses of her clothing and support. The death of the slave at the early age of 24 or 25, as stated in the bill, was a loss for which the father could not be answerable. If the question as to the receipt of the amount due on the bond, and the services of the black girl, was the only one in this case, it might be necessary to inquire whether the loose declarations of the father, which are testified to by the children of the complainants, were sufficient to revive the cause of action for these stale claims which had lain dormant for more than twenty-five years after the husband's legal right to recover such claims had accrued. In relation to the equity of these claims, it may be sufficient to remark that the complainants undoubtedly received an ample equivalent therefor in the free use which they had of the Greenbush farm without rent, for more than ten years after the discharge of E. Van Epps under the insolvent act, in 1816, and before the death of his father-in-law. If that farm actually belonged to the mother of Mrs. Van Epps, the father, as tenant by the curtesy, was entitled to the use of it during his life; and he therefore had a legal right to charge the complainants for the use thereof. And it is hardly to be presumed that he would have suffered them to occupy the farm with-

1833.

Van Epps
v.
Van Deusen.

out rent for so many years, if he had supposed this dormant claim would have been revived after his death, for the purpose of defeating the disposition of his property, which had been made by his will. There are other objections to the recovery in this suit, however, which renders it unnecessary for me to decide upon the merits of that part of the controversy, at this time.

There can be no doubt of the intention of the testator to charge each of his children, who were legatees or devisees under his will, with the payment of one fourth of all debts which were justly due and owing by him at the time of his death. After directing the payment of his debts by his executors, in the usual form, and disposing of all his real and personal estate among his children and others, the testator proceeds as follows: " Notwithstanding the directions herein contained for the payment of my debts, I hereby order and direct my son Harpert and my daughters Nancy, Margaret and Getty, each to bear and pay one fourth of all past claims and debts that shall be claimed or obtained from my executors, or paid by my executors; and that each shall bear and pay one fourth of my funeral expenses, and the putting of a good and decent fence around the burying ground on the farm on which I reside, and of procuring a good tomb stone for my grave." Although an ordinary creditor of the testator might not, even in this court, be deprived of his usual remedy against the executor for an account and satisfaction of his debt out of the personal estate, without bringing these other legatees and devisees before the court, (upon which point I do not intend to express any opinion at this time,) neither of those legatees or devisees can bring a suit to recover a debt against the estate, without first relinquishing all benefit which he or she is entitled to under the will, or bringing the other parties, who are bound to contribute towards the payment of that debt before the court as parties. If the whole property devised and bequeathed to Mrs. Van Epps actually belonged to her, in equity, as the heir at law of her mother, it is probable that, upon a bill properly framed, she might have a decree against the three other devisees and legatees under the will, for the payment of a debt justly due from the testator, without relin-

quishing the mere legal title to her own property, which was transferred to her by the will. But even in that case, she would be compelled to relinquish the specific legacy of certain personal property given to her by the will, or to abandon her claim as to one fourth of the debt. And to such a bill the two half sisters who are bound to contribute towards the payment of the debts, should be parties. In the bill filed in this case, there is no allegation whatever as to the equitable right of the complainants to the Greenbush farms, independent of the devise thereof by the will of the testator. That question, therefore, was not in issue in this cause, and no decree could properly be founded upon the admissions or proofs in relation to this subject.

Another serious and substantial objection to the complainants' right to a decree in this cause, arises out of the assignment of the husband, under the insolvent act, in 1816. That assignment is no bar to the wife's equity to a support for herself and her infant children out of the property which belonged to her husband in her right merely, provided her other property is insufficient for that purpose. But as between the husband and this defendant, as the representative of his father, neither can be admitted to allege or prove that the testator committed perjury in the insolvent proceedings. It appears from those proceedings that the testator became a petitioning creditor of Van Epps for the sum of $1529,87, which was nearly two thirds of all the debts then owing by the insolvent. Both must therefore have sworn, on that occasion, that such sum was justly due from Van Epps to the testator. And all the husband's interest in the claim for which this suit is brought is specifically pledged, in the hands of the assignees, for the payment of this and other debts due to the creditors of the insolvent at that time.

An assignment by the husband, under the insolvent act, vests in the assignee the personal estate in action of the wife, unless the same is secured to her as her separate property. But the assignee takes the legal interest in the same subject to the wife's right by survivorship, if the husband dies before the assignee has reduced such property to possession.

(*Harper* v. *Ravenhill*, 1 *Tamlyn's Rep.* 144.   *Pierce* v. *Thornely*, 2 *Sim. Rep.* 167.   *Honner* v. *Morton*, 3 *Russ. Rep.* 65, 90.) The assignee also takes the assignment of the wife's estate in action, subject to her equitable claim thereon for the support of herself and her infant children, if she has no other sufficient means for that purpose ; provided such claim is asserted by the wife, or there is a suit instituted in this court for the recovery of such property, before the assignee has reduced it to possession.  (*Smith* v. *Kane*, 2 *Paige's Rep.* 303.   *Steinmetz* v. *Halthin*, 1 *Glyn & Jam. Rep.* 64.   2 *Kent's Com.* 139.)  It has indeed been doubted whether this court could interfere to restrain the husband, or his assignee, from proceeding at law to possess himself of the wife's property in action, and to compel him to allow her a suitable provision out of the same for her support.   But if the wife is entitled to such an equity upon a bill filed by the husband or his assignee, or by a third person, as all the cases upon this subject admit, I can see no valid objection in principle against granting her similar relief where the husband, or the general assignee in bankruptcy, is endeavoring to deprive her of that equity by an unconscientious proceeding in a court of law.   The case referred to by Lord Hardwicke, (1 *West's Rep.* 581,) in which an injunction was granted to restrain the husband of an infant feme covert from proceeding in the ecclesiastical court to recover a legacy due to his wife, is analogous in principle to the case of an injunction to restrain the husband or his assignee from proceeding at law for the same purpose.   It is settled indeed in the case of *Kenney* v. *Udall*, (5 *John. Chan. Rep.* 464, 3 *Cowen's Rep.* 590, *S. C.*,) that if the wife's property in action is of equitable cognizance, she may file her bill in this court against her husband, or his assignee, to restrain them from obtaining possession of the fund without providing for her support.   The same principle has been recognized by the court of appeals in Kentucky.  (*See Elliott* v. *Waring*, 5 *Monroe's R.* 341.)  The claim in this case comes within the principle of those decisions ; as this court treats a party who has received the property of an infant as the guardian, and compels him to account as such.   I am therefore satisfied that upon a proper bill the right of the wife would be protected as against the

creditors of the husband, and against his assignee under the insolvent act. The equity of the wife, however, does not extend to the assigned property, where she has a reasonable fund for the support of herself and her infant children independent thereof. In this case it appears by the pleadings and proofs that she has a valuable farm of three hundred acres of land ; and there is nothing to show that it is not amply sufficient for her support. If such is the fact, she has no equitable claim whatever to this demand, against the estate of her deceased father, the legal title to which passed to the assignee of her husband, for the benefit of the creditors, thirteen years before the filing of the bill in this cause. But the proper parties are not before the court for the decision of this question. A decree in this case would not protect the defendant against the claim of the assignee. And as this objection was distinctly made in the answer of the defendant, the complainants should have amended their bill and brought the assignee before the court, if they wished to enforce the wife's equity to a provision out of the assigned property.

There seems to be some little doubt as to the practice of this court in dismissing the bill for want of proper parties, or in permitting the complainant to amend, or to file a supplemental bill, for the purpose of bringing the proper parties before the court. I apprehend the whole difficulty on this subject has arisen from a want of attention to the distinction between those cases where the objection is taken by the defendant at the proper time and in the proper form, by plea, answer or demurrer, and those where he neglects to make the objection until the hearing of the cause. If the objection is taken by plea or demurrer, it is a matter of course to dismiss the complainant's bill upon the allowance of the plea or demurrer, unless the complainant takes issue on the plea, or obtains leave to amend upon the usual terms. But the defendant is not bound to plead or demur. He may make the objection in his answer, and may have the same benefit of the objection at the hearing as if it had been taken by plea or demurrer. Where the objection is made in the answer, the proper course for the complainant is to amend his bill, so as to bring the proper parties before the court before any further

1833.

Van Epps
v.
Van Deusen.

expense has been made in the cause. If he neglects to do this, it will rest in the discretion of the court, at the hearing, to permit the cause to stand over, upon the payments of all such costs as he may have unnecessarily subjected the adverse party to by his neglect, for the purpose of enabling him to bring the proper parties before the court, or to dismiss the bill with costs. (*See Baldwin* v. *Lawrence,* 2 *Sim. & Stu. Rep.* 18. *Greenleaf* v. *Queen,* 1 *Peters' Rep.* 149.) And if the bill is dismissed at the hearing for want of proper parties, it should not be dismissed absolutely; as that might bar a future suit against the same defendants, in which all other necessary parties were brought before the court. (*See Craig* v. *Barbour,* 2 *J. J. Marsh. Rep.* 220. *Thompson* v. *Clay,* 3 *Monroe's Rep.* 361.) The proper course in such a case, if the cause is not permitted to stand over, is to dismiss the bill without prejudice to the claim or right of the complainant in any future litigation. If the defendant makes no objection for want of proper parties, either by plea, answer or demurrer, and raises that objection for the first time at the hearing, the bill should not be dismissed, where the defect can be remedied by an amendment or a supplemental bill; provided the complainant elects to bring the proper parties before the court within a reasonable time. (3 *Monroe's Rep.* 125. 7 *Id.* 57, 217, 477. *Guen* v. *Poole,* 5 *Bro. P. C.* 504, *Toml. ed. Court* v. *Jeffrey,* 1 *Sim. & Stu. Rep.* 105.) I am aware of but one exception to this rule; and that is where it is evident that the necessary parties were left out of the bill, by the fraudulent or wilful omission of the complainant, or in bad faith. (*See Stafford* v. *The City of London,* 1 *Peer Wms. Rep.* 428. *Rowland* v. *Garman,* 1 *J. J. Marsh. Rep.* 76.)

In this case, the discharge of E. Van Epps under the insolvent act, in 1816, and the assignment of his property, were distinctly stated in the answer. The complainants were also apprized by such answer that the objection for the want of parties would be made at the hearing, and that the defendant claimed the same benefit as if the objection had been made by a plea. As it was perfectly evident that no decree could be made against the defendant in favor of the wife's equity without having the assignee before the court, and as the facts stat-

ed in the answer must have been within the personal knowledge of both the complainants, there is no excuse for their neglect to bring the assignee before the court, by an amendment of the bill, in proper season.    There are also many reasons for believing that further litigation in this matter would only subject the complainants to a useless and unnecessary expense, from which they could not ultimately derive any benefit.  I shall therefore direct this bill to be dismissed, with costs ; but without prejudice to the equitable rights of the wife, if she thinks proper to institute a new suit, and to bring all the necessary parties before the court.