MARY MARTIN, BY JOSEPH DEAN, HER NEXT FRIEND, *v.* MORRIS L. MARTIN AND ANOTHER.

IT is now the settled rule of the court, that it will interfere and restrain a husband from recovering the wife's property at law until he makes a provision for her. But not where she lives apart from him without cause, or has a sufficient provision from other sources.

Where a husband had allowed a sum belonging to his wife to go in discharge of a mortgage on trust property, of which they were in the united enjoyment, and she afterwards enforced a settlement so as to exclude him, he was allowed a proportion of the rents.

March 19, 20.
April 8.

THE bill in this cause was filed to obtain an adjudication of the court that certain real estate held in trust by the defendant Richards, was the sole and exclusive property of the complainant; that the rents should be applied to her separate use, and a direction to a trustee so to apply

them, or for his removal and appointment of a new one, or a receiver.

The complainant at the filing of the bill, lived separated from her husband, and the bill contained various allegations of abusive, improper, and menacing treatment and language. It sought a separation on this ground. This was refused. The main question in the cause was, whether the deed of trust was a valid and subsisting instrument. This was established upon the facts and circumstances. Other questions arose, but it is not deemed of importance to report the opinion upon them.

*Mr. Field,* for the complainant.

*Mr. Duryee* and *Mr. Greenwood,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR :—On the 9th of December, 1829, John Haggerty and wife, by deed of that date conveyed a certain farm on Long Island, the premises in controversy, to Samuel Richards. The consideration was $12,000. $3000 was paid at the time, and the balance was secured by a bond and mortgage of Richards upon the premises.

A declaration of trust was executed by Richards, dated the same day, but in fact executed, acknowledged, and delivered on the 16th of December, 1829, in which it is recited that Samuel Richards, at the request of Mary Martin, wife of Norris L. Martin, had consented to become trustee of the lands after mentioned upon the trusts therein expressed—and that John Haggerty had agreed for the sale and conveyance to Richards of the lands conveyed to him, which conveyance was to be contemporaneous with those presents; and that $3000 of the said trust monies had been appropriated for the payment of so much of the purchase money of the land, and the residue amounting to $9,000 was to be secured by bond and mortgage. And that Mary Martin had required that a declaration of the trusts should be executed, and the said declaration had been drawn for such purpose. Therefore it was witnessed

that it was thereby declared, admitted and confessed by the said Richards, that such conveyance from Haggerty had been made to and received and accepted by him, for and upon the uses and trusts thereunto expressed and declared. The trusts were then set forth limiting the property in substance for the sole use of the wife. The sum of $3000, as stated in the instrument, was paid down, and the sum of $5000 was subsequently paid upon the bond and mortgage.

Some obscurity attends the transactions as to these payments, but I believe the following is the correct result to be drawn from the evidence.

It seems that there was a lease given by one Roosevelt, as guardian, to William L. Johnston, of a parcel of property in Brooklyn, and I understand it to be conceded (though the fact does not distinctly appear) that Mrs. Martin was the lessee, or entitled to the lease before her marriage. It also appears that she or the party from whom she got the lease had put certain improvements upon the premises, and especially a house which one witness values at $4,000. This lease expired about 1834.

Johnston, the owner of the property, conveyed the fee, and as supposed in the year 1824, to the defendant Martin. No payment was made of any part of the consideration money, but a bond and mortgage was executed for the whole amount, viz. $3,000. About the time of the purchase of the farm at the Narrows, two lots, part of the premises at Brooklyn, were sold to one Willoughby for $3,000; who gave his bond and mortgage for the whole amount. These securities were given to Haggerty in payment of part of the purchase money of the Narrows farm. It also appears that Martin gave a mortgage for $5,510 to Mrs. White, formerly Miller, upon the Brooklyn property. When the sale was made to Willoughby she released the two lots from this mortgage, and I understand that Johnston also released these lots from his mortgage. The house erected upon the premises was not upon the two lots sold to Willoughby, but upon the other parcel. After this Johnston foreclosed his mortgage, and upon a sale

the proceeds were sufficient to pay him in full, and to pay something upon the debt to Mrs. White. She became the purchaser.

Thus it appears that the defendant Martin never in point of fact paid in money any part of this $3,000 for the fee of the property in question. He mortgaged the premises to raise or to secure a previous debt of $5,510, owing by himself. Then the improvements placed upon the premises by Mrs. Martin before marriage went to contribute to the discharge of the original mortgage given by Martin to Johnston, and in part to pay the second mortgage given by him to Mrs. White. Now the leasehold interest may probably be treated as reduced into possession by Martin, upon his taking a conveyance from the lessor in fee and executing a mortgage back upon the whole : and then in strict legal right, the mortgage of Willoughby transferred to Haggerty was a transfer of his own property. But the result is very clear upon the whole transaction that the improvements put upon the premises by her of the value of $4,000 first went with the soil, to discharge the purchase money for which he was bound; and next the balance, namely $1,885, of his own personal debt. No strong equity can in such a case arise from the fact that the $3,000 bond and mortgage did in point of law belong to him.

*Next*, as to the $5,000 paid on the bond to Haggerty in May, 1832—It appears that Mrs. Martin was entitled to two sixths of certain premises in New-York, and also to a dower right in the whole. The property was sold in the month of September, 1830, and for the sum of $16,440. Her right of dower would be in the one third or in $5,480, stated by Miller to have been $5,300. But as she was the owner in her own right of two sixths, this right of dower was to that extent merged. The remaining dower interest was in $3,651, or four sixths of $5,480. Miller became the purchaser; received a deed from the other owners, among whom were Miller and his wife, and gave his bond and mortgage to three of the grantors in the sum of $2,650, taken as half the dower amount, conditioned to pay the

interest to Mrs. Martin during her life, and the principal to the obligees upon her death ; and it is to be inferred that the property remained in his hands as purchaser, subject to the other one sixth of the dower right. It is impossible to suppose that Mrs. Martin was not over thirty-seven years of age in 1832, and then it is a demonstration that her whole interest as doweress upon the principles of annuities could not exceed $2,400. It then appears that the bond and mortgage for $2,650, dated the 25th of September, 1830, given as above mentioned to secure her dower in three sixth parts, was cancelled of record on the 30th of May, 1832, at the request of the purchaser from Miller. A new bond for the same sum was given, dated 29th of May, 1832, secured by a mortgage on property in Brooklyn.

On the 2d of May, 1832, Miller pays to Haggerty $2,000, and on the 30th $3,000 ; and Miller states that about the time these payments were made Mrs. Martin's interest in the last bond for $2,610 was paid and settled, and included in the $5,000. I have supposed that this bond and mortgage remains in force so far as the interests of the owners of the fee are concerned, and I understand that her dower right in $2,650, and in the other one sixth, viz. $913, was then valued by him ; he in fact redeeming her right to take the interest for her life by paying a sum in gross, and I assume that this amounted to $2,334, or the difference between the $2,666 coming to her on her own account and the $5,000 paid Haggerty. This amount seems large, but if there is a material error on this point it must be corrected. I cannot understand the statement that her dower right was liquidated at about $4,000, except that her whole right in the whole property was settled at that sum, which also appears to me large.

The payments to Haggerty were made, as he states, by his mother's request, and because he thought it was for her advantage. It was made, I conclude, without Martin's knowledge or assent. He, of course, was apprized of it, when he paid subsequent interest accruing on the bond, and about six months afterwards. But this knowledge I

do not look upon as at all affecting any equity he may possess; especially when the claim is now on his wife's behalf, to enforce the declaration of trust against him.

The result of this detail is this: that Mrs. Martin was entitled absolutely to the two sixths of the avails of the New-York property, which amounted to $2,066, and to a dower right in $3,561, liquidated at say $2,334.

The question then is, what were the rights of the defendant Martin, in and to the proceeds of the sale of the Nassau-street property, at the time of the application of $5,000, upon the mortgage held by Haggerty; whether this court would have left him to his legal remedies, if he had any, or interposed in favor of the wife.

In the time of Chancellor Kent, the law of the court was understood to be, that it would not interfere by injunction, or in any other mode, when the property of the wife was recoverable at law, to prevent the husband obtaining it; but if the husband or his assignees were obliged to resort to this court for aid, a suitable provision out of the property would be made for the wife. (See *Udall* v. *Ronney*, 5 *Johns. C. R.* 464. 3 *Cowen*, 590. *Haviland* v. *Myers*, 6 *Johns. Ch. Rep.* 25.)

The next step was to restrain the husband or his assignee, from proceeding at law to recover property of the wife, where he had abandoned her, or treated her ill, or compelled her to separate from him. (*Renwick* v. *Renwick*, before the vice-chancellor, and on appeal, 1836, *MSS. McElhattan* v. *Howell*, 4 *Hayw.* 19, 24.) There are also authorities to the point, that when the husband is insolvent, and his creditors are pursuing property at law, this court will compel a settlement by granting an injunction. (*Van Eppes* v. *Van Duzer*, 4 *Paige*, 64. *Elliot* v. *Waring*, 5 *Mum.* 340.)

In *Van Eppes* v. *Van Duzer*, however, it was said that the court would not interfere where the wife has a reasonable fund for her support, independent of the property in question.

In the case of *Fry* v. *Fry*, (7 *Paige*, 462,) the chancellor says, that the power of the court to restrain the hus-

1840.

Martin
v.
Martin and another.

band from proceeding at law to obtain possession of a legacy, or a portion in personal estate which came to her by will or inheritance, until he makes a provision for her, is now placed beyond any reasonable doubt. But if she is living apart from him, without his consent, and without any justifiable cause, the court will refuse to interfere.

Upon the best consideration I can give to the facts of the case, I conclude that this court would not have interfered with the defendant's resort to law, so far as he sought recovery of interest or income merely.

The violent and abusive' language of the defendant, which has been proven, took place a long time before the appropriation in question, and the parties had lived together, and the offence had been tacitly forgiven, and he appears to have contributed his exertions to the support of his family.

The bond which was taken for securing three sixths of the dower right was taken to three of the heirs as obligees conditioned to pay the interest to her during life. It was then the substitute for her dower estate in the land to that proportion; and I apprehend it was like any chose in action of the wife acquired during coverture, and suable by the husband.' It has been urged that by permitting the bond to be thus taken, he meant to allow it to be a gift to the wife, and that it operates as such. I cannot agree to this conclusion. It was giving the security the exact form which the property before the sale substantially had; a right in the wife to take so much income, and reached by the husband through her right. This defence might also have been taken at law.

Again, as to the two shares which belonged to her, there was an action at law open to Martin for its recovery, or a bill could have been sustained here upon the ground of a lien for unpaid purchase money. Probably he could have sued for the whole at law, and this court, if applied to, might have interfered to prevent the capital going to him, but in my opinion it would not have gone further. (See *Hammond* v. *Stier*, 2 *Gill & Johnson*, 81. *Bennet* v. *Bellingham*, 2 *Dana*, 438. *Jackson* v. *Edwards*, 7 *Paige*,

386, and 20 *Wendell*.)  As to the remaining one sixth of the dower right it remained an unextinguished lien upon the land in Miller's hands, and Martin had his legal remedy for one sixth of one third of the rents and profits.

The defendant allows the application of these monies to the extinguishment of the mortgage.  He never seeks to question it.  If his situation had remained unchanged, he would have continued in the participation of the rents and profits of the farm.  But the interest money was first to be kept down.  And as the property was hers to her separate use, the income of her other estate after the rents, was properly applicable to such interest.  The defendant then, must either have allowed such application, or paid the interest himself from his own peculiar fund, or had it paid from the rents.  In either event so much of advantage did he lose from the annual income.

In any point of view then, I think that the interest must have been kept down, and he would have contributed to it had they continued to live in harmony.  And it is upon this basis that I conclude to adjust the rights of the parties.  The defendant in the first place expressly applies the three thousand dollars, (assuming it to have been unquestionably his property,) to the purchase, and settles the property on her.  He submits to the appropriation of five thousand dollars of his wife's estate in which he had a right to the interest for her life in part, and for his own life in part.  He was then in participation of the use and profits of the farm.  He submitted to the appropriation in expectation of continuing in this enjoyment.  He would never have allowed it, had the strict right of the wife under the declaration of trust been then asserted.  This court is now required to enforce that strict right; and as the price of its interposition, and to do justice between the parties, will require some provision by which the interests of the husband in the whole estate shall not be utterly swept away.  I see no equitable mode of doing this but treating him as having invested his interest money in this property, and consenting to take a proportion of the rents and profits in substitution of such interest.

The decree as to this point was, that the receiver and the trustee when appointed, pay out of the rents and profits the interest of the mortgage held by Haggerty, and out of the clear surplus of such rents and profits that he pay five equal twelfth parts to the defendant Martin, and the residue to the complainants.