### In re SNOW et ux.

[1 N. Y. Leg. Obs. 264; 5 Law Rep. 369.] [1]

District Court, S. D. New York. Aug., 1842.

BANKRUPTCY—WIFE'S CHOSE IN ACTION—AS-
SIGNEE'S RIGHTS THEREIN.

The official assignee is not entitled to a chose in action of the bankrupt's wife, where there is no evidence to show that the bankrupt ever asserted his marital right thereto, or made any attempt to reduce it into possession.

[In the matter of the petition of George W. Snow and Emeline, his wife.]

P. Clark, for Snow and wife.
The official assignee in person.

BETTS, District Judge. This case comes to decision in effect as upon a bill in equity on behalf of the wife to rescue from the possession of the official assignee a note for $800, claimed to be her sole property. On the 24th of March the general assignee moved the court for an order that the bankrupt deliver into his possession the note in question, as part of the property named in Schedule A. The bankrupt's counsel opposed the application, upon the ground that the note belonged to his wife before marriage, and had never been reduced to possession by him. The court, in view of the petition and schedule, observed that the title of the wife to the note was exhibited in so vague and loose a manner as to leave it doubtful whether the court had cognizance of the matter. If the assignee applied to the court to compel the wife to deliver up the note, the court could protect her rights thereto, and would be cautious in dispossessing her of the property which the husband had not made his own, or brought under his control; and even if he had attempted to assert his marital rights over it, but the aid of the equity powers of the court was necessary to complete his title, her interest would then be carefully considered and preserved to her, although the legal title of the husband should be acknowledged; but that, the inventory having set out a hypothetical right to the note, as taken in his own name for his wife's property, it was at least equivocal on that statement whether the assignee had not a legal title to the note, and in such case the court would not in an incidental and summary manner interfere with his right to the possession of property which prima facie belonged to the bankrupt. It was declared accordingly, that if the right was in the wife, or there was an equity in her behalf to a provision out of the note, she must proceed in some manner that would enable the assignee or creditors to meet the question directly. The husband and wife subsequently filed a petition to the court in the nature of a bill in equity, setting forth

that the wife, before her intermarriage, became entitled to some real estate in the county of Dutchess, the property of her mother, deceased, and that on sale of it a note for $800 in part payment of the consideration was given her by the purchaser. After her marriage the note still continued in her possession, and she received the interest as it became due, and, the note having also fallen due, she, her husband not being present, and not desiring or knowing it, had a new note given for the amount, payable to her husband or bearer; but this is the note now claimed; and that since its execution it has remained entirely in her possession, she having, as before, received the interest payable on it, and the husband never having reduced it to his possession, or assumed any control over it. To these allegations the assignee took a formal issue, and the matter was, by consent of parties, referred to Commissioner Mulligan. The report, and the proofs upon which it is founded, being made, the case is thereupon submitted to the court on written argument by counsel for the respective parties.

The petitioners fail to establish their case by any facts proved by disinterested witnesses; no one having knowledge of any act of disclaimer on the part of the husband in respect to the note; and it being left equivocal whether the interest was paid to the wife or husband subsequently to the renewal of the note in his name. The common understanding of the parties to the note, and of persons most intimately acquainted with the transaction, was that the note continued to be regarded as belonging to the wife, and as having never been surrendered to the husband; yet, independent of the allegations of the petitioners, there is no direct proof that it was not held by him with his other papers, and the interest thereon paid directly to him.

I should have great difficulty in treating this proceeding as a suit in equity, giving the petitioners the right of making their allegations evidence when not rebutted by proofs or an explicit denial of the facts on the part of the assignee. The connection of the assignee with the subject-matter is merely official, and he cannot be chargeable with such personal knowledge of the subject that his omitting to deny an averment shall enable the petitioners to use it as if admitted. On the contrary, if the property had been found mingled with other of the bankrupt, and indubitably in his possession, I should think the petitioners would be required to support their claim by extrinsic evidence before it could be allowed. But on a careful review of all the circumstances disclosed in the case, I am rather disposed to regard the affirmative proceeding as still being on the part of the assignee, and that the evidence is to be weighed with a view to its effect as establishing his right, independent of the former order, and the possession of

---

[1] [5 Law Rep. 369, contains only a partial report.]

the note by virtue of it. That order was clearly only provisional. The court was not so informed of the actual rights of the case that it could adjudge the merits. The order was rested upon the statement of the schedule, and, as that imported some interest in the husband, and was at least vague as to the paramount title of the wife, the assignee, as the rightful depositary of every interest of the bankrupt, was decreed the possession of the note until the legal or equitable title of the wife could be presented and established. So far, however, as any advantage may be supposed to arise out of the form of the proceeding and posture of the parties, it was not the intention of the court to take that from the wife or confer it on the assignee.

Regarding the case in its present aspect as an appeal to the equity powers of the court to adjudge and settle the right of possession of the note, I shall discuss the question as if the note was only in custody of the law, and the pending application was alike on the part of the assignee and of the wife. The fair bearing of the evidence, in my judgment, is that the husband, in point of fact, never interfered with the exclusive right of his wife to this note and the moneys secured by it. It was natural that it should be cherished by her as a portion of her mother's estate, without regard to the circumstances of her husband, and it is clear that the alteration of the note from her own name to that of her husband was not made with any expression of a wish or expectation by her that the change would affect her exclusive interest in it. She had it done without the presence of her husband, in her own family and by her relatives, and, as then declared, for the purpose of enabling her to collect the money, being under the persuasion that it could not properly stand and be enforced in her name after her marriage. The testimony does not show that the husband had any knowledge whatever of the change when made, or that any act of his subsequently evinced an intention to reduce the security to his own possession; for, if the proofs do not show affirmatively that the interest was afterwards paid to the wife solely, neither does it, in evidence of his exercise of ownership, show that he received it. The matter was then so placed that the husband could at any moment have made this note his own by any act or assertion of title, but the evidence is wanting that he ever exercised that authority. The general doctrine is well settled that the assignee cannot take the wife's separate estate not reduced to possession by the bankrupt before his bankruptcy. Owen, Bankr. 120, 121; 3 Kent, Comm. 125; Clancy, Husb. & W. 124, 127, 148, 537, 476–491; 9 Ves. 87; Roper, Husb. & W. 203. And if the wife has title or a mere equity in real or personal chattels or choses in action, chancery will protect that as paramount to the right of the husband's assignee, who comes in by the operation of law. 1 Paige, 620; 2 Paige, 303; 6 Paige, 366; 4 Paige, 64; 2 Brod. & B. 233; Clancy, Husb. & W. 476.

The intimation in some of the cases that an assignee in bankruptcy would be deemed in possession of chattels and choses in action of the wife of the bankrupt, not reduced to possession by him, upon the ground that the assignee is clothed with all the legal powers of the husband, and may under such power demand possession, is not supported by the more modern authorities. The assignee is now limited, in respect to the wife's estate, to the interest of the bankrupt actually had or possessed, and cannot exercise in his behalf an election in that respect. I shall accordingly in this case order the note in question to be restored to Mrs. Snow, the wife of the bankrupt. But it being payable to the bankrupt, and the bankrupt in his inventory having named it as property in which he might have a legal interest, it became the duty of the assignee to claim the note, and afterwards to demand the judgment of the court whether it belonged to the estate of the bankrupt. This condition of things is brought about by the fault of the wife of the bankrupt, and not by that of the assignee, and accordingly the costs of this defence must be paid the assignee before surrender of the note.