DAVID DAVIS, administrator of Thomas T. Hains, impleaded with Esther Hains, widow, &c., plaintiff in error, v. ELISHA HARKNESS *et al.*, defendants in error.

### *Error to McLean.*

It is a general rule of the common law, that the expenses of an infant, or ward, shall be kept within the income, or produce, of his estate, although the Court of Chancery, or other proper Court, has frequently, in cases of strong necessity, upon proper application, ordered the portion of the principal to be appropriated in that way. But in doing this, they have always proceeded with great caution, and have only done it in urgent cases.

In this State, the legislature has, by express provision of statute, directed the expenditure to be made by the guardian under the order and direction of the Court of Probate, and required that the rents and profits arising from the ward's real estate, and the interest on his money should be first resorted to for his education and maintenance.

A. married the widow of B., who, as administratrix, held the estate of her minor children, which, by the marriage, came into his hands while residing in the State of Ohio. Subsequently, he came with them to this State. Neither while he resided in Ohio, nor after he came hither, did he even let it be known to the proper authorities, that he had any money, belonging to the minors, in his hands; on the contrary, he secretly appropriated the whole to his own use, preserving no account of it in any way, nor keeping any account of the expenses and outlays. A. died, leaving assets insufficient for the payment of all the claims against his estate. The minors on coming of age, filed their bill in chancery to compel the administrator of A. to account for their shares of their deceased father's estate. The Circuit Court found that A. had received $1000 belonging to them, and allowed the interest of that sum for their maintenance until A.'s death, and decreed the payment of the principal, with six per cent. interest thereon from the time of A.'s death, and further decreed that the same be paid by his administrator, as one of the third class of claims under the 110th section of the Statute of Wills: *Held*, that in equity, A. must be considered as having received the money as guardian, and that the complainants were entitled to an account against him as such guardian, and, therefore, that the decree of the Circuit Court was correct.

Courts of Equity are not bound down by the literal expressions of a statute, but where a case is found to be within the equity of the provision, it is held to be within the provision itself.

BILL IN EQUITY, in the McLean Circuit Court, brought by the defendants in error against the plaintiff in error. The cause was heard at the September term 1843, before the Hon. Samuel H. Treat, and a decree rendered in favor of the

complainants for the payment of $1292·50 out of the assets of the estate of the defendant's intestate.

The cause was brought into this Court by agreement, upon the following statement of facts.

Samuel Harkness died in Ohio in 1822, leaving Esther, his widow, and Elisha, aged about three years, and Hannah, about one year, his children. The widow was duly appointed administratrix of his estate, and acted in that capacity. On the 30th day of January, 1824, she intermarried with Thomas H. Hains, who, after such intermarriage, acted in the administration, and received several sums of money, parcel of Harkness' estate, for which he never accounted. He voluntarily brought up and educated the children, they doing service in his family as is common in such cases.

Hains, after the marriage, lived with his family in Xenia, and Carlisle, Ohio, until August, 1833, when he removed to this State with the family, and resided here until his death in October, 1838. After he married, he studied the profession of medicine, and practiced it until his decease. He had no property at the date of his marriage. Elisha, at this time, was four years of age.

After the decease of Hains, Davis, the plaintiff in error, became his administrator and is still such, and has in his hands assets exceeding the amount claimed by the defendants in error. There are other creditors of Hains, and those assets are insufficient to pay all the claims.

Elisha Harkness, Hannah McClure, his sister, and John McClure, her husband, filed their bill in the Circuit Court to compel the said administrator to account for their shares of Samuel Harkness' estate. He filed his answer thereto, submitting, among other things, that Hains was entitled to charge said children for maintenance and education, and that the amount expended therefor should, so far as shown, be in reduction of the amount claimed in their bill. It was admitted that the children were, by the laws of Ohio, each entitled to one third of their father's estate remaining subject to distribution.

The Court below found, on the hearing, that Hains received

one thousand dollars of moneys to which said children were entitled, and made allowance of the interest on that sum in favor of Hains for their maintenance till Hains died, and decreed the payment of that sum, according to the prayer of the bill, with six per cent. interest after Hains' decease, and directed the same to be paid as one of the third class of claims under the 110th section of the Statute of Wills.

It was proved that Hains maintained and educated the children at the common schools, the same as his own children. The testimony as to the expense incurred by him in that wise, including services of children, was as follows: William Thomas estimated the annual expense for each at from $60 to $75; Benj. C. Hains, at about $80 for each per annum; Lewis Bunn, at the same rate; Marjory Bunn, at not less than $100 per annum for each; which witnesses were well acquainted with Hains' family. It further appeared that he intended to charge said children with the expense of their maintenance and education.

On this state of the case, the following errors were assigned, to wit:

*First.* The Court erred in refusing to make any allowance for the maintenance of the children above the interest of the money;

*Second.* The Court erred in making the claim of the complainants a preferred claim, by placing it in the third class under the 110th section of the Statute of Wills, to the injury of creditors and others; and

*Third.* The Court erred in rendering any decree against the plaintiff in error.

It was further agreed by the parties that the only questions to be discussed were those involved in the first and second assignment of errors.

*W. Colton,* for the plaintiff in error:

As to the first point, the supposed rule, that the money of an infant shall remain entire, is not inflexible. The authorities are conflicting. *Matter of Bostwick,* 4 Johns. Ch. R. 101; *Whipple* v. *Dow,* 2 Mass. 415; *Cooper* v. *Martin,* 4 East.

77, as to an implied promise of an infant, after coming of age, to pay for necessaries, the infant having a separate property. *Barlow* v. *Grant*, 1 Vern. 255; *Harvey* v. *Harvey*, 2 Peere Williams, 21; *Walker* v. *Wetherell*, 6 Vesey, 473. It is admitted that there is an apparent conflict with former cases, but it is insisted that the reason of the decision is founded on the amount of the legacy. *Reeves* v. *Brymer*, 6 Vesey, 425; *Sherwood* v. *Smith*, Ib. 454. The rule is infringed in these cases. Relative to guardians and infants, the following authorities are cited: R. L. 455; *Aynsworth* v. *Pratchett*, 13 Vesey, 321; *Cary* v. *Macon*, 4 Call. 606; 1 Barb. & Har. Dig. 630, title *Infant*, §§ 12, 13, 14.

As to the second point, the preference of the claim, the following authorities were cited. Statute of Wills, § 110; Hains was not an administrator. 3 Bac. Abr. 34; 1 Wentworth on Pl. 201, note. There must be an actual administration, and the law must be construed strictly. 2 Chitty's Pl. 105; 1 Roper on Property, 200; 2 Williams on Executors, 1376, 1307; 1 Schoales & Lefroy, 173. The husband is liable for the wife's *devastavit*, although co-executors are not liable for each other's *devastavit*. If a wife is an administratrix, and dies, the husband's authority ceases. 1 Schoales & Lefroy, 243. Hains was liable only as trustee, and not as administrator. Williams on Executors, 151; *Morell* v. *Dickey*, 1 Johns. Ch. R. 157; *Doolittle* v. *Lewis*, 7 do. 47.

*S. T. Logan & A. Lincoln*, for the defendants in error:

As to the first point. The general rule is, that a guardian should not be permitted to break the capital of the ward for education and maintenance, though there are exceptions. The rule applies to cases where the money and custody of the minors were in the same person. 2 Story's Eq. Jur. 584, § 1355. Whenever the rule is innovated, an order of the Court of Chancery must first be obtained. *Walker* v. *Wetherell*, 6 Vesey, 473; *Chapline* v. *Moore*, 7 Munroe, 150, 170; 1 Barb. & Har. Dig. 591, 592, § 17; Ib. 593, § 30; *Whitledge's Heirs* v. *Collis*, 2 J. J. Marsh. 404; *Van Epps* v. *Van Deusen*, 4 Paige, 64; *Vance* v. *Campbell's Heirs*, 1 Dana,

231; *Tanner* v. *Davidson*, 3 Bibb. 456. The case of *Barlow* v. *Grant*, 1 Vernon, 255, is not law, and it is the only case where money and infant were in the same hands, and where the capital was allowed to be infringed on, &c. In very extraordinary cases, on the application of the guardian to a Court of Equity, it may be allowed. If the rule is to be infringed in this case, it is insisted that the interest was sufficient. Children should be compelled to do all they can, and their labor deducted from their expenses. 4 Barb. & Har. Dig. 232, § 2.

As to the second point. The plaintiff is within the spirit of the rule. Reeve's Dom. Rel. 192; Toller on Executors, 241, 358; 2 Williams on Executors, 1306; *Yard* v. *Eland*, 1 Lord Raym. 369; *Wankford* v. *Wankford*, 1 Salk. 306. He is within the words of the statute. *Campbell* v. *Tousey*, 7 Cowen, 64. Leaving Ohio, he was still administrator.

*E. D. Baker*, for the plaintiff in error, in conclusion:

There is great difficulty in supporting the decision in New York to the extent of making a foreign executor or administrator liable in such State for assets received abroad, and brought into the State by him. Story's Conflict of Laws, 429. Hains is liable as trustee only. As administrator, he would only be liable to the forum where he was administrator. The question is, Has he expended the money for the children, and can he be allowed for the expenditures? It is denied that the rule is, that the capital cannot be diminished; if such is the rule, it ought not to be adopted in this case. *Matter of Bostwick*, 4 Johns. Ch. R. 101; 2 Williams on Executors, 698, 1307, 1308.

The Opinion of the Court was delivered by

CATON, J.* Two questions are to be determined in the decision of this case. *First*, whether the complainants below are entitled to any decree against the estate of his plaintiff's

---

* WILSON, C. J. did not hear the argument in this cause, and Thomas, J. having been of counsel, gave no opinion.

intestate;. and *second,* if they are, whether the amount allowed them shall be placed in the third classification, as was decreed below.

Whether the plaintiff's intestate came into possession of the complainants' estate as executor, administrator, guardian or trustee, the plaintiff cannot complain, if we apply the same rule that we would in case of a legally constituted guardian in determining his right to. break in upon the infants' estate for their maintenance and support..

It is a general rule of the common law, that the expenses of the infant, or ward, shall be kept within the income, or produce, of his estate, although the Court of Chancery, or other proper Court, has frequently, in cases of strong neces-sity, upon proper application, ordered a portion of the prin-cipal to be appropriated in that way; but in doing this, they have always proceeded with great caution, and have only done it, in urgent cases. The inducements for guardians to invent for their wards artificial wants, that they may reap an incidental benefit in the expenditure of their estate, has ad-monished the Courts to guard, with a jealous eye, the estates of infants, who are unable to protect themselves. Without this the ward would but too often become the victim of the guardian, and the most ample estate would, during a pro-tracted minority, become dissipated more to his advantage than that of his ward. In view of this danger, and for the purpose of tying the hands of guardians as far as possible against improvident expenditures, the legislature had direct-ed, that the expenditure shall be made under the order and direction of the Court of Probate. The statute says, "The guardian shall have power, under the direction of the Court of Probate, to superintend the education and nurture of the ward, and for that purpose, may pay out such portion of the ward's money as the Court of Probate shall from time to time by or-der direct; *provided,* that the rents and profits arising from his real estate, and next the interest on the ward's money, shall always be first resorted to for the education and nurture of the ward." R. L. 455, § 10; Gale's Stat. 466. This statute very wisely concludes the *right* of the guardian to expend

any of the ward's money for any purpose, without first obtaining an order of the Court of Probate, and as that Court is always open, and its proceedings summary, and not expensive, but little or no inconvenience can result from this provision, and nothing compared with the security which it must afford, if properly observed. The ward would be without protection, if the guardian were allowed to go on from year to year, without rendering any account, trusting in the end to get his charges allowed upon the gross estimates of witnesses. Such a proceeding is too suspicious to receive the sanction or encouragement of this Court.

That the Courts of Chancery have a right, in peculiar cases, to allow a guardian for indispensable expenses incurred on account of the ward, although they may break in upon the principal estate, and no previous order of the Court has been obtained, cannot be doubted; but it will only be done in very extraordinary cases, where a strong necessity for the expenditure is shown, and a satisfactory reason given why a previous order was not obtained. When a guardian disregards the directions of the law, he must expect his conduct to be looked upon with jealousy, and that he will receive favors with a reluctant discretion.

Now what is this case? While these complainants were yet in early infancy, Hains married their mother in 1824, who, as administratrix of their father, was in possession of their estate which thereby fell into his hands. This was in the State of of Ohio, whence in 1833 he removed to this State, bringing them with him. They continued to reside in his family till the time of his death, in 1838. Neither while he resided in Ohio, nor after he came to this State, did he ever render any account of his trust, whatever it might be, nor did he ever let it be known to the proper authorities, that he had any money belonging to the minors in his hands; but, on the contrary, he secretly appropriated the whole to his own use, preserving no account of it in any way, nor did he keep any account of the expenses and outlays. The whole transaction, if not an outrage on the law, and the rules of propriety, is at least very suspicious, and demands a rigid scrutiny before any

allowance is made, even from the interest, which should be allowed on their estate in his hands. His case is very different from that of a regularly appointed guardian, subject to the supervision and control of the Court of Probate, when the estate would have been put at a regular interest and on good security, where it would have been beyond danger of ultimate loss. Now, they are without security, subjected to the expense of a protracted litigation, and have necessarily incurred the danger of a loss of the whole, both from a want of the necessary proof to establish their demand, and from his insolvency. It was the object of the legislature, and is the desire of the Court to guard against such contingencies. He cannot expect the same favor and indulgence, which a regular guardian, who had observed the requirements of the law, might justly claim. To allow it to him, would be but to encourage such illegal practices. We should enforce an observance, rather than encourage a violation of the law.

It is true, that Hains did his duty faithfully, perhaps, so far as the custody, support and education of the infants were concerned; but, at the same time, he utterly disregarded it as to the management and security of their estate. For the former, the Court may have been justified in allowing the interest on their estate; but for the latter, by all the principles of law he cannot be allowed to break in upon the principal. We are, therefore, disposed to approve of the amount allowed by the Court below in favor of the complainants.

The only remaining question is, whether the Court below was right in giving this claim a priority in payment over ordinary creditors, out of the estate of Hains, who died insolvent. This was done under the 110th section of the Statute of Wills, which provides that demands against estates shall be divided into four classes. *First,* funeral expenses, &c.; *second,* expenses of administration; *third,* "where any executor, administrator or guardian has received money as such, his executor or administrator shall pay out of his estate the amount thus received, and not accounted for, which shall compose the third class;" and *fourth,* all other debts, &c.

I find myself unable to make out that the husband of an

Davis, adm'r, v. Harkness et al.

administratrix is, strictly speaking, an administrator. 1st. He cannot administer alone, which he could do, were he an administrator; 2d. He is liable for *devastavit* of the wife, which is not the case in general with a co-administrator. 3 Bac. Ab. 31, title *Executors*, D. 2.; 3d. After the death of the wife, his control over the estate ceases; 4th. He is joined with the wife, rather for conformity. 1 Wentworth on Pl. 201, note; 2 Chitty's Pl. 105; 5th. He is not executor *de son tort*, for he came into the possession rightfully. 3 Bac. Abr. 20; Toller on Executors, 241. There was already an administratrix. 3 Bac. Abr. 22; 1 Williams on Executors, 151.

But while I am satisfied that the plaintiff's intestate was not, strictly speaking, administrator, yet I am not prepared to say, that if driven to that extremity, to bring this case within the provisions of the statute, where it is so obviously within the intention of the legislature, that the Court would not hold, that in equity he received the estate of these infants as administrator. Courts of Equity are not bound down by the literal expressions of the statute; but where a case is found to be within the equity of the provision, it is held to be within the provision itself. Thus, in South Carolina, where bonded debts are entitled to a preference over simple contract debts, a bill was filed by heirs against the executors of a husband of an administratrix, who had collected debts belonging to the estate of his wife's intestate, and appropriated the proceeds to his own use, it was held that the bonded debts, which he had thus collected, should be considered as bonded debts against his estate, and have a preference over his simple contract debts. 1 Dessaussure's Eq. R. 208. This was going as far as we should go, should we hold that the money was received by Hains as administrator. There those debts were no more bonded debts, than Hains is administrator here.

But we attain the same end by taking another view of this case, which, I think, is the proper one on which it should be decided. Authorities are not wanting to show that Hains received this money, as guardian of these infants, and as such, they may claim an account for it, if they choose. In *Newburgh* v. *Brockerstoff*, 1 Vern. 296, "The Lord Keeper ob-

served, that Littleton says, if a man intrudes upon an infant, he shall receive the profits but as guardian, and the infant shall have an account against him in this Court as against a guardian." And in the case of *Van Epps* v. *Van Douser*, 4 Paige, 71, the Chancellor says, "A mere stranger, or wrong-doer, who takes possession of the property of an infant, and receives the rents and profits thereof, may in Equity be considered as the guardian of the infant, and may be compelled to account as such."

Upon principle, too, as well as authority, should the infant be entitled to an account against him as guardian. It would be a strange rule of equity, indeed, if the infant were not as well protected against the violence of the wrong-doer, as he is against the peculations of an appointed guardian. If he receive the money of the infant, and use it, he is estopped from denying that he received it as guardian, and so is his representative. The design of the legislature in giving the priority, which is provided for in the third classification, was to protect those who were not able to protect themselves, and this case comes not only within the policy and intention of the law, but, as I have endeavored to show, within its literal construction. A construction which would exclude these complainants from the benefits of this provision, would be superficial indeed.

The decree of the Court below was correct, and is affirmed with costs.

*Decree affirmed.*