## HAMMOND v. KNOX.

(Supreme Court, Appellate Division, Fourth Department.   March 4, 1908.)

1. APPEARANCE—FAILURE TO APPEAR—NECESSITY OF FURTHER NOTICE.

One interested in an action who fails to appear, though he has been duly notified at the outset, is not entitled to further notice unless a statute requires it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appearance, § 165.]

2. INSURANCE—MUTUAL INSURANCE—LEVY OF ASSESSMENTS—NOTICE TO POLICY HOLDERS.

The purpose of Rev. Laws Mass. c. 118, §§ 47, 48, et seq., providing that a mutual fire insurance company may make an assessment for the amount needed to pay losses, etc., and authorizing the Supreme Judicial Court to order an assessment in specified cases, etc., is to provide a summary, speedy method of providing a fund to meet losses, and notice by mail to policy holders of the application to the court for the levy of an assessment and of the hearing before the auditor appointed by the court is sufficient.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 433.]

3. SAME—AUTHORITY OF DIRECTORS OF MUTUAL COMPANY.

The by-laws of a foreign mutual insurance company providing that where the company is not possessed of sufficient funds to pay losses the directors shall make an assessment for the amount needed upon the members liable therefor, etc., vest authority in the directors, without any notice to policy holders, to levy assessments.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 433.]

4. SAME—CONTRACT OF INSURANCE—STATUTES AS PART OF CONTRACT.

The rights and liabilities of the members of a mutual fire insurance company are primarily fixed by contract, and, where a policy issued by a foreign insurance company stipulates that assessments shall be made in pursuance of the laws of the state of the origin of the company, the statutes thereof regulating the levy of assessments are a part of the contract.

5. JUDGMENT—ACTION ON JUDGMENT OF COURT OF ANOTHER STATE—EVIDENCE—EXEMPLIFIED RECORD.

A policy issued by a Massachusetts mutual fire insurance company stipulated that the insured might be required to pay assessments imposed in compliance with laws of Massachusetts. The mode of procedure prescribed by such laws was observed in the levy of assessments. *Held*, that under Const. U. S. art. 4, § 1, and Act Cong. May 26, 1790, c. 11, 1 Stat. 122, providing that authenticated judicial proceedings shall have faith and credit given them in every court within the United States, etc., an exemplified record of the proceedings in the Massachusetts court resulting in the levy of assessments was evidence of the necessity and validity of the assessments in an action in the courts of New York to enforce an assessment, and common-law proof was not essential to the establishment of a cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1782.]

6. INSURANCE—MUTUAL INSURANCE—LEVY OF ASSESSMENTS—NOTICE TO POLICY HOLDERS.

A fire policy issued by a Massachusetts mutual fire insurance company stipulated that insured should pay such sums as might be assessed by the

directors pursuant to the laws of Massachusetts. He was advised that the
receiver of the company intended to apply to the Massachusetts court for
leave to levy assessments, and was notified that a hearing on the applica-
tion would be had before the auditor appointed by the court. *Held*, that
he could not keep silent and assail the proceeding when the levy was
made simply by charging that no process of the court was served on him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 433.]

7. SAME—RECEIVER OF MUTUAL COMPANY—EFFECT OF APPOINTMENT—AUTHOR-
ITY OF COURT.

The court, on appointing a receiver of a mutual fire insurance company,
assumes control of the affairs of the company and exercises the functions
of its directors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 93.]

8. SAME—LEVY OF ASSESSMENTS.

Where the court of a sister state directed the levy of assessments on
the members of a mutual fire insurance company in the manner provided
by the laws of the state, made a part of the contract of insurance by
the stipulations of the policies, the determination of the court was prima
facie evidence of the validity and necessity of the assessments.

9. SAME—CANCELLATION OF POLICY—RIGHT OF INSURED—INSOLVENCY OF COM-
PANY.

The right of insured in a mutual fire insurance policy stipulating that
it may be canceled at any time at the request of the insured, and, if can-
celed, the unearned premium shall be returned, is not available to insured
after the company has become insolvent and a receiver has been ap-
pointed.

10. SAME—EXTENT OF LIABILITY ON ASSESSMENT.

A mutual fire insurance policy stipulated that the insured should pay, in
addition to the cash premium, all such sums as might be assessed by the
directors, provided that the assessments should not exceed a sum equal to
the amount of the cash premium. *Held*, that the amount of assessments
was fixed by the policy, and was determined by the amount of the cash
premium provided for in the policy, and not by the sum actually paid by
insured on a settlement between himself and the company without preju-
dice to any claim for assessments.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 431.]

Appeal from Trial Term, Erie County.

Action by Frank T. Hammond, receiver of the Atlas Mutual In-
surance Company, against Seymour H. Knox. From a judgment for
plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Frank Gibbons, for appellant.
L. M. Cummings, for respondent.

SPRING, J. On the 11th day of March, 1904, the plaintiff was
appointed receiver of the Atlas Mutual Insurance Company, a mutual
fire association organized in pursuance of the laws of the state of
Massachusetts, with its principal place of business in Boston in that
state. The defendant resides in the city of Buffalo, in the state of
New York; and in September, 1903, the insurance company issued
to him two fire insurance policies. The premium on one policy was
$555, and the other $2,620. Each policy contained an "agreement by
the insured as a condition of this policy that the said insured or their
legal representatives shall pay in addition to said cash premium all

such sums as may be assessed by the directors of said company, pursuant to the laws of the commonwealth of Massachusetts, but in no event shall said assessment or assessments exceed a sum equal to the amount of said cash premium."

This action is commenced by the receiver to recover of the defendant assessments claimed to have been made in compliance with the contract provision quoted, and the regularity of the proceedings terminating in the assessment is assailed. The record on appeal does not purport to contain all the evidence given upon the trial. It is made in form a bill of exceptions, containing a synopsis of each of the exhibits received in evidence, and which pertain mainly to the proceedings culminating in the assessments against the stockholders. These exhibits and the findings of the court, which in the main include in detail the various steps taken, with very little oral proof, comprise the case on appeal.

The proceedings were instituted in pursuance of certain statutes of the state of Massachusetts. The Revised Laws, c. 118, §§ 47, 48, are as follows:

"Sec. 47: If a mutual fire insurance company is not possessed of cash funds above its insurance reserve, sufficient for the payment of incurred losses and expenses, it shall make an assessment for the amount needed to pay such losses and expenses upon its members liable to assessment therefor in proportion to their several liability.

"Sec. 48: If by reason of depreciation or loss of its funds or otherwise, the cash assets of such a company after providing for its other debts, are less than the required premium reserve upon its policies, it shall make good the deficiency by assessment in the mode provided in the preceding section."

If the directors of the company determine that a necessity exists for a call or assessment upon the members, application may be made "to the Supreme Judicial Court for any county, by a petition in the nature of a bill in equity, praying the court to examine such assessment or call, the necessity therefor, and all matters connected therewith, and to ratify, amend or annul the assessment or call or to order that the same be made as law and justice may require." A hearing is had before the auditor appointed by the court, and upon his report the court acts, making such a decree as "justice and equity require," and the decree is final "and conclusive upon the company and upon all persons liable to the assessment or call, as to the necessity of the same, the authority of the company to make and collect the same, the amount thereof and all formalities connected therewith. An assessment or call altered or amended by a vote of directors and decree of court thereon, shall be binding upon all parties who would have been liable under it as originally made, and in all legal proceedings shall be held to be such original assessment or call." The findings show that while the defendant was insured in the company "losses occurred in the lawful business of said company, and by reason of depreciation and loss of its funds, the cash assets of the said company, after providing for its other debts, became less than the required premium reserve upon its policies." That "by reason of such depreciation and loss it became necessary to levy a mutual assessment upon the members of the company to provide for and pay the same in accordance with the laws of the commonwealth of Massachusetts." The

109 N.Y.S.—24

plaintiff was appointed receiver of the company, March 11, 1904, by said Supreme Court, and made application in December following to that court for an order or decree directing the assessment to be made upon the members. The defendant had notice by mail of this proceeding, "and all proceedings thereunder," including the hearing on the report of the auditor. In pursuance of the decree "an assessment was ordered by the directors of the company of $73,500 upon the former and present members of the company liable thereto, the same being necessary for the payment of incurred losses and expenses of collecting, and of receivership, the company being insolvent." The assessment was, on May 12th thereafter, duly ratified by the Supreme Court, but no notice of the application was served upon the defendant, nor was there any appearance upon his part in any of the proceedings. Schedules were made, in said decree apportioning said assessment among the members of the said company, and the defendant's aliquot proportion, as fixed by the decree, was $1,342.92, and which he refused to pay on demand.

The record is not clear as to the exact amount of the liabilities of the company. The resolution of the directors passed February 11, 1905, declares that the assessment of $73,500 "is necessary for the payment of accrued losses and expenses," including those of the receivership; and this resolution was confirmed by the court, and the assessment made on that basis. The amount to be raised was to "be levied with rests at the time of each substantial fire loss," and aggregates $26,750.61. Then follows this clause in the resolution:

"And that there be added by way of overlay to the amount so levied upon each particular policy such a percentage of every such amount as will bring the aggregate of the amounts levied on all such policies including said overlay up to the sum of seventy-three thousand five hundred dollars ($73,500) the amount of the assessment herein voted and ordered."

An additional petition in the proceeding sets forth the amount of the assets of the company, and states that the "aggregate possible liabilities of the company, not including the expenses of receivership, are $75,583.50." The evidence taken before the auditor is not in the record, but the synopsis of his report is that it was necessary to raise by assessment $36,751.61, and that there were creditors in New York state to the amount of $25,050.32; and it appears there were large sums due from assessments upon policy holders residing in that state.

The purpose of the statutes of the state of Massachusetts authorizing assessments against the members of these mutual companies was to provide a summary, speedy method of providing a fund to meet losses as they occurred. What seems to be a low premium was fixed by the Atlas Company, but there was an additional liability not in excess of the cash premium provided for in the policy. The policy holders were widely scattered, for the business of the company was carried on in many of the states, and personal notice was not required to be served upon them, but notice by mail was deemed to be sufficient. This notice apparently was not required in each stage of the proceeding. The defendant had notice by mail of the original petition to the court, and of the other steps in that distinct part of

the proceeding, but did not appear, and no notice of the subsequent proceedings was given him. Had he appeared, I assume he would have been entitled to notice of every step leading up to the final decree. In every action or proceeding in court where one interested has been duly notified at the outset and neglects to appear, he cannot be expected to receive further notice unless some statute requires it. It would not be feasible in making assessments of this kind against a large number of policy holders widely scattered to notify each policy holder personally, and notice by mail is all that need be required. Stevens v. Hein, 37 App. Div. 542, 55 N. Y. Supp. 491.

There was also a by-law of the company in force since October, 1902, reading as follows:

"Whenever the company is not possessed of cash funds above its reinsurance reserve sufficient for the payment of incurred losses and expenses, the directors shall make an assessment for the amount needed to pay such losses and expenses upon the members liable to assessment therefor, in proportion to their several liabilities, provided the assessment or assessments upon any member shall not exceed the amount of the policy liability of such member, which shall be a sum equal to, but in no event shall the total assessment or assessments exceed, the cash premium charged upon each policy."

The object of this by-law was to vest the authority in the directors, without any notice whatever, to impose these assessments. Had there been no receivership, the directors by virtue of this by-law, without any application to the court, would have been authorized to make any assessment upon the members needed to pay losses and expenses within the "cash premium charged on the policy."

It is claimed that common-law proof was essential to enable the plaintiff to establish his cause of action against the defendant, and that the exemplified record of the proceedings in the Massachusetts court was no evidence of the necessity or validity of the assessment levied. The rights and liabilities of the members of the Atlas Association were primarily fixed by contract. Each member agreed to pay whatever sum or sums might be assessed by the company, not in excess of the cash premium. These assessments were to be made in pursuance of the laws of the state of Massachusetts, so that the statutes regulating these assessments became a part of the contract. The statute provided a method of procedure, where application to the court was necessary, which has been followed in this case. An action was commenced charging that the company was insolvent, and a receiver was appointed by the decree or judgment of the court. The receiver applied upon petition setting forth the necessity for the levy of assessments to pay existing losses, and after a hearing the necessity was judicially determined; and the directors, carrying out the orders of the court, made the assessments. The defendant had notice by mail of the initiation of the proceeding by the receiver and of the hearing before the auditor. As already suggested, it would be impracticable to serve personally on all the policy holders, who were in many states, and, except for the fact that service by mail is required by the Massachusetts statute, no service at all would seem to be necessary on the individual members of the association. Hawkins v. Glenn, 131 U. S. 319, 329, 9 Sup. Ct. 739, 33 L. Ed. 184;

Glenn v. Liggett, 135 U. S. 533, 543, et seq., 10 Sup. Ct. 867, 34 L. Ed. 262. The corporation is the party, and the members have entered into an agreement to be bound by the action of the directors in the matter of levying assessments when they act conformably to the laws of the state of Massachusetts. Passing that, however, when the defendant was advised that the receiver intended to apply to the court for leave to levy assessments upon the members of the association, and was further notified that a hearing upon this application was to be had before the auditor appointed by the court, it was his privilege to appear and resist the application and present proof showing no necessity existed for the levy. He could not keep silent and then assail the proceeding when the levy is made upon him simply by charging that no process of the court was served upon him. Notice by the receiver, and subsequently by the auditor, should have attracted his attention.

Nor do I think common-law evidence was essential in this case. I am aware that in Converse v. Stuart, 105 App. Div. 478, 94 N. Y. Supp. 310, the court held otherwise. In that case the defendant had no notice whatever of the assessment imposed, and the facts were entirely different from those found in the case we are reviewing. In Howarth v. Angle, 162 N. Y. 179, 56 N. E. 489, 47 L. R. A. 725, there is a statement that the defendant may controvert the validity of the assessment, but in that case common-law evidence was received. The proceedings in the present case were the result of an agreement to which the defendant subscribed, whereby he agreed to pay "all such sums as might be assessed by the directors of said company pursuant to the laws of the commonwealth of Massachusetts," up to the amount of his cash premium. The assessments in question were assessed by the directors. True, the assessments were made in obedience to a decree of the court. The decree was based upon the auditor's report, which the court deemed sufficient warrant for its judgment. The court, without remitting the matter to the directors, might have acted in their stead. In appointing the receiver the court assumed control of the affairs of the insolvent corporation and exercised the functions of the directors. Great Western Tel. Co. v. Purdy, 162 U. S. 329, 336, 16 Sup. Ct. 810, 40 L. Ed. 986. In that case it was held the effect of an assessment, whether made by the directors or the court, was "conclusive evidence of the necessity for making such an assessment, and to that extent bound every stockholder without personal notice to him." The decree there did not purport to be a judgment against any individual stockholder, and, consequently, the defendant, a stockholder, might interpose any defense peculiar to him, and the statute of limitations was held good on his plea. Comity between the states requires that the decree or judgment of the state of Massachusetts be given due effect. Howarth v. Angle, 162 N. Y. 179, 56 N. E. 489, 47 L. R. A. 725, affirming 39 App. Div. 151, 57 N. Y. Supp. 187. That is a constitutional mandate (Const. U. S. art. 4, § 1); and Congress in the exercise of the authority bestowed upon it by that section has enacted that "the said records and judicial proceedings, so authenticated, shall have such faith and credit given them in every court within the United

States, that they have by law or usage in the courts of the state from which they were taken." Act May 26, 1790, c. 11, 1 Stat. 122. After all, whether the decree has all the verity of a judgment is not of the utmost importance. The defendant by his contract agreed to be subjected to the maximum liability of his premium for losses incurred in compliance with the laws of the state where the company was organized. The mode of procedure prescribed by those laws has been observed, and the assessments levied upon the defendant, with other stockholders, to pay the obligations of the company. The receiver is simply endeavoring to enforce an assessment which the defendant voluntarily assumed as a condition of the issuance of the policy to him.

It is also urged that there is no justification for so large an assessment, as the indebtedness of the company was not shown to equal the amount assessed. The proofs are not before us. There were many policy holders in different states, and the levy was made upon all. Some would be irresponsible; the expense of enforcing payment would probably be heavy; and all these matters we may assume were considered in making the assessment at the amount stated. The full sum ordered would not be realized for the payment of the debts of the company. If each policy holder is to be permitted to impeach the amount of the levy made, it would cease to be ratable, and the adjudications would vary in the several actions. The one purpose of the whole proceeding was to ascertain and determine as to the necessity of an assessment. The court passed upon that proposition, and its adjudication is conclusive. It is also prima facie evidence, at least, of the amount of the assessment to be levied. The record denotes that it was ratably levied upon the stockholders, and the sums chargeable against the defendant are contained in the decree. We are not obliged to go beyond these holdings in order to sustain the judgment. The defendant did not seek to offer any evidence impugning the validity of the assessment; but he contented himself with relying upon the alleged weakness of the plaintiff's case, except as to an affirmative defense to which I will advert later.

It is also to be observed that it is stipulated in the record evidence was given to support certain findings which are enumerated. The evidence is not in the record, so whether it was by the testimony of witnesses or by stipulation of the parties we are not advised In the findings, not included in this specific admission, the exemplified record sustains them, and for aught we know they may rest upon abundant other evidence. We are not to assume the contrary.

The policy contained a clause that it should be canceled at any time at the request of the assured; and, if canceled, "the premium having been actually paid, the unearned premium should be returned to him." After the adjudication of insolvency and the appointment of the plaintiff as receiver, the defendant attempted to avail himself of this privilege. He had not paid the premium, but subsequently the court permitted the receiver to settle with him by paying the earned premium to the date of the judgment of insolvency, which the defendant paid. The judgment explicitly provided that the compromise should not include "any claim for any possible future assess-

ment." The defendant had no notice of the entry of this decree, but the settlement did not purport to relieve him from liability to contribute toward the payment of losses according to the stipulations of his policy. The right to cancel in any event could not be available to the assured after the association had become insolvent; if so, every policy holder might cause his policy to be canceled and leave the creditors unpaid.

Again, he claims, if liable at all, the assessment must be imposed upon the sum actually paid by him, instead of the cash premium provided for in the policy. The amount is fixed by the contract, and the settlement of the other controversy does not assume to modify the provision. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.