THEODORE W. STONE, as Receiver of the ELECTRIC MUTUAL CASUALTY ASSOCIATION OF PHILADELPHIA, Respondent, *v.* THE PENN YAN, KEUKA PARK AND BRANCHPORT RAILWAY, Appellant.

Insurance (casualty) — when receivers of insolvent casualty association may make valid assessment upon its members — right of non-resident receiver of such corporation to maintain action for such assessment against member residing in this state.

When the directors of a casualty company were authorized to make an assessment upon its members, the court, assuming charge of its assets upon its insolvency, may make a valid assessment, although the member so assessed is not a party to the proceeding. In an action brought in this state by a foreign receiver of the company to recover, the decree directing the assessment is not subject to collateral attack as to the necessity therefor, but the member so assessed is not debarred from pleading or showing that it is not liable upon its contract.

Where no public policy will be contravened and no rights of our citizens interfered with, the right of a foreign receiver to maintain such an action in this state, upon the principle of comity, is well recognized.

An insurance company had no office or agency in this state, and does not appear to have solicited business here or attempted to evade the operation of our statute. An application for insurance was made by mail to the office of the company in another state and the policies mailed to the applicant in this state. *Held,* that the contract was made in the foreign state, and if valid there, as to which there is no question, is valid everywhere, and that the circumstances were not such as to constitute a violation of the laws of this state prohibiting any corporation from transacting the business of insurance in the state without the certificate of the superintendent of insurance.

*Stone* v. *Penn Yan, K. P. & B. Railway,* 125 App. Div. 94, affirmed.

(Submitted December 17, 1909; decided January 18, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 13, 1908, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought by the plaintiff, as receiver of the Electric Mutual Casualty Association of Philadelphia, a corporation organized under the laws of the state of Pennsylvania, having its principal office in the city of Philadelphia, to recover the amount unpaid of a premium on an insurance policy and the unpaid assessments upon policies of insurance issued by the association to the defendant. The defendant is a domestic corporation, operating an electric railway between the villages of Penn Yan and Branchport, in this state. The policies indemnified the defendant against legal liability for accidents occurring upon its railway and they were issued under the following circumstances. The defendant's treasurer resided in the state of Massachusetts and the application for the first of the policies came from him, at Penn Yan, in August, 1897, to the home office of the association, in Philadelphia ; which, thereupon, issued and sent the first policy. The application for the two subsequent policies, issued in September, 1898, and in September, 1899, were sent by the defendant's treasurer from his residence in Massachusetts, and the association transmitted the policies applied for to that place. The transactions between the assured and the insurer were conducted through the post offices. The defendant retained the policies transmitted by the insurer ; but, at the time of the appointment of the plaintiff as receiver, it had not paid all of the face premium due on the last policy. In May, 1900, the insurer was adjudged by the court in Pennsylvania to be insolvent; the plaintiff was duly appointed receiver thereof and he duly qualified, and has been acting, as such receiver. The proceedings adjudging the insolvency of the association and the appointment of the plaintiff as receiver were regular, according to the laws and practice of the state of Pennsylvania. The receiver, among other things, was directed to take charge of the estate and effects of the insol-

vent association and to collect the debts and property belonging to it.

Each of the policies issued provided, among other things, that the rate, upon which the premium thereon was based, was to be three per cent. of the gross traffic receipts of the defendant and " if the fixed premium rate charged by said association shall be insufficient to pay losses, the directors may charge a *pro rata* additional sum to make up said deficiency, but in no event shall the total amount of premium and liability exceed five per centum of the gross traffic receipts of the assured." In July, 1903, the court in Pennsylvania ordered and decreed that an assessment be levied upon all members, including the defendant, who held assessable policies in the association, and an assessment of two per cent. was levied upon the gross traffic receipts, under the three policies issued to the defendant; which amounted, in the aggregate, to $1,139.33. Notice of the assessments was duly served by the plaintiff upon the defendant and the demand for their payment, and of the unpaid balance of the premium on the last policy, not having been complied with, the receiver commenced this action to recover their amounts.

In addition to the foregoing facts found by the referee, before whom the trial was had, it was, also, found, as a fact, that the association, of which the plaintiff is the receiver, had never complied with any of the requirements of the statutes of the state of New York, obligatory upon insurance companies of other states seeking to transact business in this state. The referee directed judgment in favor of the plaintiff for the sum demanded and the judgment entered in accordance with his direction has been affirmed by the Appellate Division, in the fourth department, by the unanimous vote of the justices. The defendant has, further, appealed to this court.

*Charles A. Hawley* and *Calvin J. Huson* for appellant. The company for which the plaintiff is receiver was not authorized to do business within this state, but was prohibited

because of non-compliance with the Insurance Law. (L. 1906, ch. 326, §§ 9, 25, 26, 29–34, 41, 44, 50.) The policies sued upon were not Pennsylvania but New York contracts, and were to be performed in the latter state, and their performance, as well as their making, was the transaction of insurance business in this state. (*Hale* v. *Patten*, 60 N. Y. 233; *Smith* v. *Smith*, 25 Wend. 405.) The issuing of the policies in suit was the " transaction of the business of insurance in this state," and was unlawful. Without compliance with the statutes of this state neither the foreign insurance corporation nor its receiver will be permitted to maintain an action to recover premiums or assessments. (*N. H. D. B. Co.* v. *P. S. Co.*, 25 Wend. 648; *Pennington* v. *Townsend*, 7 Wend. 276; *De Groat* v. *Van Dyne*, 20 Wend. 390; *Swing* v. *Munson*, 191 Penn. St. 582; *Rose* v. *K. C. & Co.*, 89 Wis. 545; *Pierce* v. *People*, 106 Ill. 11; *E. L. A. Co.* v. *E. L. I. Co.*, 61 Hun, 552; *Williams* v. *Cheney*, 74 Mass. 206; *H. Ins. Co.* v. *Prescott*, 42 N. H. 547; *Cowing* v. *L. Ins. Co.*, 73 Miss. 321; *Seamans* v. *T. Co.*, 105 Mich. 400.)

*Thomas Carmody* for respondent. The contracts of insurance were made in the state of Pennsylvania. (*White* v. *Corlies*, 46 N. Y. 467; *S. B. Co.* v. *Horrey*, 113 App. Div. 382; *W. M. F. Ins. Co.* v. *Hilton*, 42 App. Div. 52; *N. Y. T. C. Co.* v. *Williams*, 102 App. Div. 1; *Huntley* v. *Merrill*, 32 Barb. 626; *B. M. F. Ins. Co.* v. *Hendricks*, 41 Misc. Rep. 479; *I. F. Dept.* v. *Rice*, 108 App. Div. 100.) The receiver herein had the right to maintain this action to recover upon Pennsylvania contracts. (*Howarth* v. *Angle*, 39 App Div. 151; 161 N. Y. 179; *Runk* v. *St. John*, 29 Barb. 585; *Pugh* v. *Hurtt*, 52 How. Pr. 22; *Braclay* v. *Q. M. Co.*, 6 Lans. 25; *T. G. T. Co.* v. *C., B. & Q. R. R. Co.*, 126 N. Y. 37.) The public policy of the state of New York has not been violated by the contracts in question. (*Stoddard* v. *Lum*, 159 N. Y. 265; *Howarth* v. *Angle*, 39 App. Div. 161.) The assessments made by the Pennsylvania courts and sought to be enforced herein are valid and binding as against the

defendant and cannot be questioned in this case. (*Pringle v. Woolworth*, 90 N. Y. 502; *Hammond* v. *Knox*, 125 App. Div. 9.)

GRAY, J.   As the case comes up to this court, all questions of fact are conclusively settled by the action of the courts below.   We are not concerned with any questions, which relate to the manner of the application for, and of the issuance of, the policies of insurance; or to the subsequent adjudication of the insolvency of the insurer, the Electric Mutual Casualty Association, a corporation organized under the laws of the state of Pennsylvania, for the purpose of carrying on the business of accident insurance and of insuring its members on the mutual assessment plan; or to the appointment of the plaintiff as receiver, in proceedings instituted by the attorney general of the state of Pennsylvania, in the Court of Common Pleas, of Dauphin county, in that state, which were regular according to the laws and practice of that state; or to the decree ordering and levying an assessment upon all members, ·including this appellant, holding assessable policies The defendant, notwithstanding it was not a party before the Pennsylvania court, was bound by the proceedings there had, which resulted in the order for an assessment; so far as the necessity for making it was determined.   The directors might have made it and the court, having assumed the charge of the assets and affairs of the corporation, could exercise their office, in that respect.   The decree, however subject to direct attack, was not subject to collateral attack. (*Great Western Telegraph Co.* v. *Purdy*, 162 U. S. 329, 336; *Howarth* v. *Angle*, 162 N. Y. 179, 186; *Hammond* v. *Knox*, 125 App. Div. 9; affd., 194 N. Y. 555.)   In this suit by the receiver to recover the amount of the assessments upon the policies held by the appellant, while the decree of the foreign court is not open to attack, as to the matters determined thereby, the latter was not· debarred from pleading, or showing, that it was not liable upon its contract; whether by reason of payment, or of release, or of the running of the Statute of Limitations,

or of any other legal defense. The decree of the foreign court was *in rem*, not *in personam*, and the receiver's action must rest upon the theory that, an assessment having been validly made, the appellant was liable upon its agreement in the contract of insurance. To this claim the appellant could interpose any defense, which established the cessation of its liability, or its non-enforceability. The appellant pleaded in defense the incapacity of the association to issue the particular policies, by reason of its having failed to comply with certain requirements of the Insurance Law of this state, obligatory upon foreign corporations transacting the business of insurance here, and other defenses, denying the capacity of the plaintiff to maintain the action and setting up the bar of the Statute of Limitations. No evidence, however, was offered on its part and the case was submitted to the trial court upon sufficient proof by the plaintiff; consisting in the records of the Pennsylvania court, in the Pennsylvania statutes, in stipulations as to certain facts and in admissions of the defendant bearing upon plaintiff's case. The case must be considered as made upon the decrees of the foreign court, having jurisdiction to make them, in proceedings regularly had under the laws of the state, which established the insolvency, the custody by the court, through the appointment of its receiver, and the necessity for an assessment upon the policies held by members of this mutual association, in order to discharge its liabilities, and upon the appellant's agreement in the contract with the insurer.

The first important question for our consideration, upon this appeal, is whether these policies of insurance represented contracts of the parties, made in the state of Pennsylvania, or in this state. The referee does not find upon this subject, otherwise than by a statement of the facts, showing how they came to be issued. According to them, written applications for the policies were mailed by the treasurer of the appellant to the association, at its office in Philadelphia; one from Penn Yan, in the state of New York, and two from Worcester, in the state of Massachusetts, the latter being the place of his

residence. Policies were issued, thereupon, by the association, which were mailed to the appellant, addressed to the places from which the applications had been forwarded. They were retained by the assured and remained in force during the periods specified in each policy. I think it to be clear that the contracts for insurance were made in the state of Pennsylvania; for it was there that the applications were received and acted upon. It was there that the policies were executed and issued. Upon being mailed to the appellant, they became effective and having. been retained by the assured, there is, of course, no question of its acceptance of their terms and conditions. If Pennsylvania contracts, no question is raised as to their validity there and if valid there, then they are valid everywhere. There is no statute of this state, which forbids its citizens from entering into contracts with foreign corporations, and any law to such effect would be of doubtful validity, within the provisions of the fourteenth amendment of the Federal Constitution. (See *Allgeyer* v. *Louisiana,* 165 U. S. 578, 591.) Nor is there any such law restricting the corporations of the state. It is objected, however, that, assuming the validity of these contracts for insurance, nevertheless, because of the provisions of our Insurance Law, they are unenforceable in this state. The Insurance Law of this state provides that "no corporation * * * shall transact the business of insurance within this state without the certificate of the superintendent of insurance, certifying * * * that such corporation * * * has complied with all the requirements of law to be observed by such corporation * * * and that such corporation is authorized to transact the business of insurance specified therein in this state." (L. 1892, ch. 690, as amended L. 1893, ch. 725, sec. 9.) This prohibition is made specially applicable to foreign corporations by sections 29 and 30. There can be no question as to the power of the state to enact the prohibition and to impose any restrictions upon the operations of foreign corporations within its borders. By the comity existing between the states, corporations are permitted to do business

in other states than their own; but their operations must be subject to such laws of the foreign state as are made applicable. (See *Bank of Augusta* v. *Earle*, 13 Pet. 519, 588; *Hooper* v. *California*, 155 U. S. 648; *Allgeyer* v. *Louisiana*, 165 ib. 578; *Bard* v. *Poole*, 12 N. Y. 495, 505; *Penn Collieries Co.* v. *McKeever*, 183 ib. 98, 102.) Doubtless, if this association has brought itself within the purview of the Insurance Law, it would follow that the plaintiff would be unable to maintain the action, by reason of the contract being a prohibited insurance transaction. But that is not the case. It had neither office, nor agency, within this state; nor does it appear to have solicited business here, or that there was any attempt to evade the operation of our law. As we have seen, the transaction was initiated and consummated at its home office. If it were possible to regard the transaction as business done in this state, still, I should say, within the principle of our decision in the *Penn Collieries · Case, (supra)*, that the insurer was not transacting, or doing business here, within the meaning of the provisions of the Insurance Law referred to, or of section 15 of the General Corporation Law, which denies to a foreign corporation, not having its certificate of regularity, the right to sue here.

If, then, these insurance contracts were validly made and enforceable in the foreign state, is there any force in the objection that the case is not one "for the exercise of judicial comity?" I think not. If any policy of the state would be contravened by admitting the receiver to sue in our courts upon these contracts, the rule of comity could not be applied. But how can it be said that they are repugnant to any public policy? The most that can be argued is that the defendant had contracted for insurance with a foreign insurer, which had not qualified itself for transacting such a business in this state. But that objection is without good ground, when, as we have seen, the insurer was not in this state for the business of insurance and was not shown to be procuring it by means of solicitation, direct, or indirect. The objection is unavailable, unless it can be made to appear that in permitting the enforcement

of the appellant's agreement, some public policy will be contravened, or that the rights of our citizens will be interfered with. Subject to these qualifications, the right of the plaintiff, as a foreign receiver, to maintain this action in this state, upon the principle of comity, is one which has long been recognized. (*Dayton* v. *Borst,* 31 N. Y. 435; *Lowry* v. *Inman,* 46 ib. 119; *Howarth* v. *Angle, supra; Hammond* v. *Knox, supra.*) The statement in *Howarth* v. *Angle, (supra),* can be repeated here, appropriately: "the plaintiff does not come here seeking to remove assets from this state to the possible prejudice of domestic creditors, but asks that he be permitted to enforce against our own citizens the performance of contracts into which they have entered in another jurisdiction." This case differs, in an important feature, from those cases, where a foreign receiver is suing to enforce, not a common-law liability, but one which is peculiar to the foreign state, because founded upon some local statute. What is sought to be enforced by this action is an agreement of the appellant. It had assented to a prospective liability for an assessment, when entering into the contract with the association, and the promise to pay it sprang therefrom. Its agreement was that " if the fixed premium rate charged by said association shall be insufficient to pay losses, the directors may charge a *pro rata* additional sum, to make up said deficiency, but in no event shall the total amount of premium and liability exceed five per centum of the gross traffic receipts of the assured." The assessment, as fixed by the court, did not violate this agreement and it having been competently made, a liability to the receiver therefor followed legally; which was, as well, enforceable under our laws, as under those of the state, where the contract was made. In *Mabon* v. *Ongley,* (156 N. Y. 196), a case where the right of a foreign receiver to maintain an action for the appointment here of an ancillary receiver was denied, the opinion was careful to point out that, subject to the right of domestic creditors, he could reduce to possession all the property of the corporation and that the courts, upon the principle of comity, were as open to him as to

a domestic receiver. " Every remedy," it was said by Judge
VANN, " to gather in the assets is afforded, unless it would
interfere with the policy of the state, or impair the rights of
its own citizens." (p. 201.) In *Stoddard* v. *Lum*, (159 N. Y.
265), it was said that " the receivers and assignees of indi-
viduals and corporations domiciled in another state are per-
mitted under interstate comity to enforce the contracts of
such individuals and corporations in the state of the debtor's
residence." (p. 275.)

I think that the plaintiff could maintain the action here to
recover the unpaid balance of the premium due and the
assessments made and, therefore, that the judgment, appealed
from, should be affirmed.

EDWARD T. BARTLETT, VANN, WILLARD BARTLETT, HIS-
COCK and CHASE, JJ., concur ; CULLEN, Ch. J., absent.

Judgment affirmed, with costs.