■ BURTON HERMAN, Plaintiff, v JOHN SIEGMUND et al., Defendants. (Proceeding No. 1.) SIEGMUND CONSTRUCTION ENTERPRISES, INC., et al., Appellants, v BURTON HERMAN et al., Respondents, and LEO BEKERMUS, Intervenor-Respondent. (Proceeding No. 2.) — In a proceeding, *inter alia,* to determine adverse claims, petitioners appeal, as limited by their brief, from so much of an order and judgment (one paper) of the Supreme Court, Suffolk County (McInerney, J.), dated February 9, 1983, as denied their application to set side a Sheriff's sale, and dismissed the petition. ¶ Order and judgment reversed insofar as appealed from, on the law and the facts, without costs or disbursements, petition reinstated, and application to set aside the sale granted. ¶ In 1972, Siegmund Homes, Inc., built three model homes on certain property owned by John Siegmund on Route No. 24 in Hampton Bays, New York. In October, 1972, the model homes were sold to Siegmund Enterprises, Ltd., a corporation which Siegmund had formed in February of that year. Siegmund Enterprises leased the models back to Siegmund Homes under an oral lease. After the transfer of the model homes, Siegmund Enterprises carried them on its books, and depreciated them on its corporate tax returns. In December, 1972, plaintiff Burton Herman's employment with Siegmund Homes was terminated and, in 1973, he commenced an action (action No. 1) against both Siegmund Homes and Siegmund individually for breach of his employment contract. On April 5, 1977, a judgment was entered against Siegmund Homes in the sum of $4,260.17. The complaint with respect to John Siegmund individually was dismissed. ¶ In September, 1976, John Siegmund formed Siegmund Construction Enterprises, Inc. After the incorporation of Siegmund Construction Enterprises, the at-will tenancy of Siegmund Homes in the model homes came to an end, and the homes were then leased to the new corporation under oral leases. In October, 1976, Siegmund Homes stopped doing business, and in December, 1976, it closed out its bank account. On November 29, 1977, acting pursuant to an execution, the Suffolk County Sheriff levied upon the

model home called the "Sandpiper", and advertised the sale of all the right, title and interest which Siegmund Homes had in it. On or about December 2, 1977, the Sheriff received a letter from John Siegmund advising that the model home was owned by Siegmund Enterprises, was leased to Siegmund Corporation Enterprises, and was located on property owned by Siegmund personally. In addition, on November 17, 1977, John Siegmund informed a deputy sheriff that Siegmund Homes was no longer in business, and by letter dated January 10, 1978, Siegmund notified the Sheriff that a formal dissolution of Siegmund Homes had been filed with the Secretary of State on December 23, 1977. As a result, and on the instructions of Herman's attorney, the sale was canceled. ¶ On February 28, 1977, the Sheriff levied on two other model homes, Wildwood II and Shibui II, and a new sale date was set. On April 13, 1977, after several adjournments, these two homes and their contents were sold at auction to one Leo Bekermus. Prior to the distribution of the proceeds of the sale, appellants commenced the instant proceeding by order to show cause to vacate the Sheriff's sale on the ground that the levied property was in fact owned by Siegmund Enterprises and not by the judgment debtor, Siegmund Homes. The parties agreed that the application would be determined pursuant to CPLR 5239 and 5240. Thereafter, Special Term denied the application as untimely under CPLR 5239, but, on appeal, this court reversed and remitted the matter for a determination of the application on the merits (see *Herman v Siegmund,* 69 AD2d 871). After a hearing, Special Term held, *inter alia,* that: (1) the corporate veils of Siegmund Homes and Siegmund Enterprises should be pierced; (2) the application under CPLR 5239 was barred by laches; and (3) no special circumstances were shown for equitable relief under CPLR 5240. We reverse. ¶ The law permits incorporation of a business for the very purpose of escaping personal liability (see e.g., *Walkovszky v Carlton,* 18 NY2d 414, 417; *Bartle v Home Owners Co-op,* 309 NY 103, 106). However, when the privilege of incorporation has been abused, the corporate veil will be pierced " 'to prevent fraud or to achieve equity' " (*Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652, 656, quoting from *International Aircraft Trading Co. v Manufacturers Trust Co.,* 197 NY 285, 292). A shareholder who used control of a corporation to further his own rather than the corporation's business will be held liable for acts of the corporation in accordance with general principles of agency (*Port Chester Elec. Constr. Corp. v Atlas, supra; Cooperstein v Patrician Estates,* 97 AD2d 426). "The determinative factor is whether 'the corporation is a "dummy" for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends' " (*Port Chester Elec. Constr. Corp. v Atlas, supra,* p 657, quoting *Walkovszky v Carlton, supra,* p 418). The evidence in the record was insufficient to establish that John Siegmund, the controlling principal of the three corporations, failed to respect the separate identities of the corporations and used the corporations to pursue his personal business, as distinct from corporate business. We disagree with the intervenor's contention that Siegmund orchestrated the decline and demise of Siegmund Homes and the coincidental rise of Siegmund Construction Enterprises in order to prevent plaintiff from satisfying his judgment. In addition, the model homes were sold by Siegmund Homes to Siegmund Enterprises in October, 1972, and the sale was not fraudulent as to plaintiff since his employment was not terminated until December, 22, 1972. Accordingly, we conclude that the corporate veils of Siegmund Homes and Siegmund Enterprises should not have been pierced. ¶ We also disagree with Special Term's conclusion that this proceeding is barred by laches. Siegmund advised the Sheriff prior to the execution sale that the model home, the "Sandpiper", was owned by Siegmund Enterprises and that Siegmund Homes had no assets. Shortly thereafter, but also prior to the sale, Siegmund

notified the Sheriff that Siegmund Homes had been dissolved, and the Sheriff so informed plaintiff's attorney. The record does not support a finding of inexcusable delay on the part of appellants in asserting their rights and, therefore, Special Term erred in concluding that laches was present here (cf. *Reynolds v Snow*, 10 AD2d 101, 111, affd 8 NY2d 899). ¶ We also hold that appellants are entitled to relief pursuant to CPLR 5240. The Sheriff's sale was null and void since the judgment debtor, Siegmund Homes, had no right, title or interest in the property sold (see *Travitsky v Oysterman's Dock Co.*, 65 AD2d 554; 6 Weinstein-Korn-Miller, NY Civ Prac, par 5233.01, pp 52-647 — 52-648), and, therefore, the application to set aside the sale should have been granted. The position of a bona fide purchaser under a void sale is no better as against the real owner of the property than that of one who purchased with full knowledge of its invalidity (cf. *Place v Riley*, 98 NY 1, 5). The fact that the judgment debtor had no interest in the property which was levied upon and sold constitutes a sufficient ground for the court to exercise its equitable power to set aside the sale (cf. *Guardian Loan Co. v Early*, 47 NY2d 515, 520-521). Bracken, J. P., Brown, Niehoff and Boyers, JJ., concur.