A/S DOMINO MOBLER, et al., Plaintiffs,

v.

Jack BRAVERMAN, et al., Defendants.

No. 84 Civ. 7141 (WCC).

United States District Court, S.D. New York.

July 15, 1987.

Peter Hessellund-Jensen, New York City, for plaintiffs.

Bragar & Wexler, New York City, for defendants; Paul D. Wexler, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiffs A/S Domino Mobler et al. have brought this action against defendants

Jack Braverman ("Braverman"), I.C. Designs, Inc. ("I.C."), Designs in Butcherblock, Inc. ("DIBB") and 425 Corporation ("425") seeking to impose liability on them for default judgments which plaintiffs obtained against an entity known as Great North Woods Ltd. ("GNW"). Plaintiffs' complaint alleges that none of the corporate defendants, including GNW, had a separate corporate existence; that the corporate defendants and GNW were under the domination and control of Braverman; and that Braverman caused the corporations to make fraudulent conveyances and/or conveyances without fair consideration. The action was tried by this Court without a jury on June 26, 1987. This Opinion incorporates the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

*Background*

During the 1970's and early 1980's, the defendant corporations and GNW operated furniture importing and retail businesses in New York and Connecticut. The corporations were organized so that each did its own purchasing and each operated its own retail outlets. I.C., a New York corporation formed in 1974, operated stores at 160 East 86th Street and 425 Fifth Avenue in Manhattan; GNW, a New York corporation formed in 1978, operated a retail store at 636 11th Avenue in Manhattan; DIBB, a New York corporation formed in 1978, also had offices at 636 11th Avenue; 425, a New York corporation formed in 1981, operated a retail store at 100 Main Street in White Plains; and DIBB Conn, a Connecticut corporation formed in 1982, operated a retail store at 281 Playhouse Square in Westport, Connecticut. For purposes of advertising to the public, all of the corporations did business under the name "Great North Woods."

Sometime in mid–1982, the procedure by which the corporations operated changed slightly. At that time, GNW became primarily responsible for the manufacture and wholesale sales of furniture and for operation of the warehouse for furniture storage. BNW purchased or manufactured the furniture and resold it to the other defend-ant corporations for retail sales, adding a fee for its costs of purchasing and storage.

During the period June to August, 1982, plaintiffs, who are Danish manufacturers of furniture, took orders on open account from GNW for furniture. Plaintiffs had sold furniture to GNW in that fashion over a number of years. There was no personal guarantee issued by Braverman or any of the corporate defendants. At all relevant times, plaintiffs knew they were dealing with a corporation known as Great North Woods, Ltd. and were not induced to rely on any representations to the contrary.

In 1983, GNW and the other corporations began experiencing financial difficulties and GNW was unable to pay for the merchandise it had ordered. In or about July, 1983, plaintiffs sued GNW and obtained default judgments against it of $48,206.45 for A/S Domino Mobler; $21,058.06 for Rabami, ApS.; $22,319.52 for Taifo-Stil; and $22,798.39 for P. Vestergaard Mobelfabrik A/S.

In September 1983, GNW made an assignment for the benefit of creditors under New York law. In August 1984, DIBB made a similar assignment for the benefit of creditors. By that time, the other corporations had ceased doing business. This action, which was commenced in October 1984, seeks to hold the defendant corporations and Braverman liable for GNW's debt.

*Discussion*

Under New York law, a plaintiff must provide the Court with a substantial justification for disregarding the corporation's separate existence and piercing the corporate veil. As the New York Court of Appeals stated in *Port Chester Electrical Construction Corp. v. Atlas*, 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976);

> Nor was it appropriate in this case to disregard the corporate forms and pierce the corporate veils. Corporations, of course, are legal entities distinct from their managers and shareholders and have an independent legal existence. Ordinarily, their separate personalities cannot be disregarded. *Rapid Tr. Subway*

*Constr. Co. v. City of New York,* 259 N.Y. 472, 487–88, 182 N.E. 145. In a broad sense, the courts do have the authority to look beyond the corporate form where necessary 'to prevent fraud or to achieve equity'. *International Aircraft Trading Co. v. Manufacturers Trust Co.,* 297 N.Y. 285, 292, 79 N.E.2d 249, 252. More specifically, where a shareholder uses a corporation for the transaction of the shareholder's personal business, as distinct from the corporate business, the courts have held the shareholder liable for acts of the corporation in accordance with the general principles of agency. (citations omitted). The determinative factor is whether 'the corporation is a "dummy" for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends.' *Walkovszky v. Carlton,* 18 N.Y.2d 414, 418, 276 N.Y.S.2d 585, 223 N.E.2d 6.

The court went on to hold that:

Since [defendant] Atlas himself carefully respected the separate identities of the corporations, and each corporation was pursuing its separate corporate business, rather than the purely personal business of Atlas, we conclude that the corporate veils of the defendant corporations should not be 'pierced.' *Id.,* 389 N.Y. S.2d at 331, 357 N.E.2d 983.

The essential inquiry on a claim to pierce the corporate veil is whether the corporate form has been abused; i.e., whether the shareholder used his control of the corporation to further his own, rather than the corporation's, business, or whether the shareholder used the corporate vehicle to achieve a fraud. *Gartner v. Snyder,* 607 F.2d 582 (2d Cir.1979); *Herman v. Siegmund,* 102 A.D.2d 810, 476 N.Y.S.2d 590 (2d Dept.1984). The fact that the corporation was formed for the purpose of avoiding personal liability is immaterial, since that is one of the primary purposes for which all corporations are formed. *Gartner v. Snyder, supra.*

Some of the factors which tend to show an abuse of the corporate form are: (1) the intermingling of corporate and personal funds, *Wolkovsky v. Carlton, supra;* (2) undercapitalization of the corporation, *Gartner v. Snyder,* 607 F.2d 582 (2d Cir. 1979); (3) failure to maintain separate books and records or other formal legal requirements for the corporation, *D.C. Auld Company v. Park Electrochemical Corporation,* 553 F.Supp. 804 (E.D.N.Y. 1982). While there is no set rule as to how many of these factors must be present in order to pierce the corporate veil, the general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result. *Brunswick Corporation v. Waxman,* 599 F.2d 34, 35 (2d Cir.1979).

Here, none of the factors which would justify piercing the corporate veil is present. The defendant corporations and GNW were separately incorporated and maintained separate books, records and bank accounts. While there were some transfers of funds made from one corporation to another in the form of loans to meet operating expenses, all of these inter-corporate loans were promptly repaid in full. A separate ledger was kept to record each of these loans. Aside from these short-term inter-corporate loans, there was no evidence that any of the funds of the various corporations were used for purposes other than running the respective businesses. Most important, there was no evidence that any funds from any of the corporations were used by Braverman for his personal expenses.

Moreover, there is no evidence that any fraud was committed by Braverman. The Danish plaintiffs had been doing business with GNW on open account for years. If plaintiffs were concerned about GNW's creditworthiness, they could have refused to ship the goods without advance payment, a letter of credit, or Braverman's personal guarantee. Having failed to protect their interests in these ways, plaintiffs may look only to the coffers of the corporation upon whose solvency they relied in selling their furniture.

Plaintiffs complaint also alleges that Braverman fraudulently conveyed some of

GNW's assets thereby causing its insolvency. During the trial, however, plaintiffs presented no evidence to support this allegation. All of the conveyances which plaintiffs exposed were done in the normal course of business and all were in exchange for cash or property of an equivalent value. These included the short-term loans amongst the various corporations. Further, there was no evidence that Braverman misappropriated corporate funds on his own behalf or on behalf of his wife. Indeed, Braverman's uncontested testimony revealed that he frequently lent money to the various corporations without being fully repaid.

*Conclusion*

For the reasons outlined above, there is no justification for piercing the corporate veil and holding Braverman personally liable for the judgments obtained against GNW. Defendants' costs will be taxed against plaintiffs.

Settle judgment on notice.

So ordered.