OPINION OF THE COURT
Leland DeGrasse, J.
Plaintiff New York State Crime Victims Board (the Board) brings this action pursuant to New York’s so-called “Son of Sam” Law (Executive Law § 632-a) against several entities and individuals associated with the writing and publication of the book Underboss, which recounts the life of defendant Salvatore Gravano. Gravano, a former member of the Gambino crime family, came to public prominence after being named in a Federal racketeering indictment with his boss John Gotti. Gravano became the highest-ranking member of La Cosa Nostra ever to testify against his former associates, and his testimony was instrumental in securing convictions against Gotti, Genovese crime family head Vincent Gigante, and a number of other organized crime figures.
In addition to Gravano, the defendants named herein include Peter Maas, the author of Underboss, and T.J.M. Productions, Inc. (TJM), a corporation allegedly set up by Maas to funnel compensation to Gravano for his work on the book and movie. Defendant International Creative Management, Inc. (ICM) is Maas’ agent. Defendant HarperCollins Inc. (HC Inc.) is the publisher of Underboss, defendant Anthea Disney is the president of HC Inc., and HarperCollins, Ltd. (HC-UK) is an English affiliate of HC Inc. These three defendants collectively will be referred to herein as the “HarperCollins defendants”. *779 Finally, defendant Twentieth Century Fox Film Corporation (Fox) owns the movie rights to Underboss.
Currently before the court are motions to dismiss by the various defendants. Defendants argue that New York State’s Son of Sam Law, which was passed in 1992 after its predecessor was struck down on First Amendment grounds by the United States Supreme Court,[1] remains an unconstitutional content-based restriction on speech. In the alternative, they argue that plaintiff has not stated a cause of action under the Son of Sam Law.
FACTS
The Crime Victims Board is an agency of the Executive Department of the State with a mandate to advocate on behalf of crime victims in New York State. Among its duties are those set forth in the Son of Sam Law.[2] That statute provides, inter alia, that people or entities which contract with persons “charged with or convicted” of a crime as defined in the State’s Penal Law must give notice to the Board “as soon as practicable” of such contract or agreement. (Executive Law § 632-a [2] [a].) The Board, in turn, is required to notify the relevant crime victims about the contract or agreement. The Son of Sam Law empowers the Board to bring an action seeking certain provisional remedies to assure that the “profits of the crime” are not depleted. (Executive Law § 632-a.)
In early 1997, acting pursuant to the Son of Sam Law, the Board began to make letter inquiries of the HarperCollins defendants concerning the upcoming publication of Underboss. The Board sought information concerning any contracts that the HarperCollins defendants had entered into with Gravano.
In response to the Board’s inquiry, HC Inc. wrote a letter to the Board’s counsel stating that it “has no agreement with Mr. Gravano that comes within the scope of Section 632-a.” The letter also stated that HC Inc. had entered into a licensing *780 agreement dated July 24, 1996 with HC-UK to publish Under-boss. HC Inc. provided a copy of its contract with HC-UK to the Board.
HC Inc. also informed the Board that HC-UK had obtained rights to the book pursuant to a contract with defendant TJM. HC Inc. declined to provide a copy of this contract because the HC-UK — TJM contract contained a confidentiality provision and “the beneficiary of that agreement has not consented to HC providing you with a copy of the agreement between TJM and HC-UK.”
The Board received a similar response from HC-UK, which stated in its letter to Board that it had not entered into a contract with Gravano and had no obligation to “pay any monies” to Gravano. HC-UK declined to provide the Board with its contract with TJM.
Counsel for Maas and TJM responded to the Board’s letter with a terse letter stating simply that “Peter Maas and TJM Productions, Inc. do not have an agreement with Mr. Gravano that comes within the scope of Section 632-A of the New York Executive Law.” In a subsequent letter, Maas’ counsel declined to provide the HC-UK — TJM contract, citing the confidentiality provision.
HC Inc. published Underboss in April 1997. The Board filed its initial complaint in this action soon thereafter. Defendants promptly moved to dismiss the complaint.
In July 1997, the Board wrote to Fox concerning Fox’s contract for the rights to produce a movie version of Under-boss. Fox admitted that it had entered into a contract to produce the film, but denied that it had contracted with Gravano. In its letter Fox stated that “all money to be paid by Fox under the contract will be paid to ICM, Peter Maas’ agent.”
In September 1997 the Board filed its amended complaint, adding Fox and ICM as defendants, asserting a new ground for liability, and alleging additional facts gleaned from Gravano’s testimony in United States v Gigante. With the court’s approval, defendants withdrew their motions to dismiss without prejudice in light of the new allegations contained in the amended complaint.
A. The Amended Complaint
The amended complaint alleges that TJM “and/or its principal Peter Maas” obtained Gravano’s cooperation to write a book based on his exploits. TJM and/or Maas then sold the *781 publishing rights to HC-UK, which in turn licensed HC Inc. to publish and distribute the book. The complaint also alleges that TJM and/or Maas sold the movie rights to Fox and that ICM helped negotiate this deal and agreed to receive payment from Fox on behalf of Maas and Gravano.
The Board asserts three causes of action against defendants based on these deals. First, it alleges that all the defendants save Gravano violated that Son of Sam Law by failing to give notice to the Board of their deals to produce the book and movie versions of Underboss. The second, ill-defined cause of action alleges that the defendants entered into a “scheme” to avoid the Son of Sam Law by funneling their payments to Gravano through TJM, which, the complaint alleges, was set up by Maas to further this “scheme”. The third cause of action alleges a similar “scheme” to use ICM to pay Gravano in a manner designed to avoid the strictures of the Son of Sam Law.
As relief plaintiff seeks a judgment declaring, inter alia, that the monies paid to Gravano for his participation in the composition of Underboss are “profits of the crime” as defined in the Son of Sam Law and that defendants’ alleged failure to notify the Board about their agreements to publish Underboss violated the Son of Sam Law. The complaint also seeks damages in an amount equivalent to all money paid to Gravano, directly or indirectly, for his participation in the book and movie and claims that defendants are jointly and severally liable for these damages. Finally plaintiff seeks an injunction barring defendants from paying any more money to Gravano.
Defendants responded to the amended complaint with the instant motions.
DISCUSSION
The complaint fails to state a cause of action under the Son of Sam Law. Therefore, there is no need for this court to determine whether the Son of Sam Law passes constitutional muster. “[C]ourts should not address constitutional issues when a decision can be reached on other grounds”. (Matter of Syquia v Board of Educ., 80 NY2d 531, 535.)
A. The Son of Sam Law
The Son of Sam Law is designed to assist crime victims in this State recover in certain circumstances from the criminals who caused them harm. It has the dual purpose of preventing criminals from profiting from their crimes and of enabling the compensation of the victims of those crimes.
*782 The statute seeks to facilitate the identification of potential assets from which judgments could be satisfied, thereby allowing the Crime Victims Board and the victims themselves to take steps to attach these assets before they can be dissipated or secreted. The statute reaches only assets that are generated by the commission of the crime that injured the victims.
As currently drafted, the Son of Sam Law bears the ungainly aspect of a statute that has been drafted to avoid the constitutional problems that felled its predecessor. The law provides that any person or entity who “knowingly contracts for, pays, or agrees to pay, any profit from a crime, as defined in subdivision one of this section, to a person charged with or convicted of that crime shall give written notice to the crime victims board of the payment, or obligation to pay as soon as practicable after discovering that the payment or intended payment is a profit from a crime.” (Executive Law § 632-a [2] [a].)
Section 632-a (1) (b) defines “profits from the crime” as “(i) any property obtained through or income generated from the commission of a crime of which the defendant was convicted; (ii) any property obtained by or income generated from the sale, conversion or exchange of proceeds of a crime * * * (iii) any property which the defendant obtained or income generated as a result of having committed the crime, including any assets obtained through the use of unique knowledge obtained during the commission of, or in preparation for the commission of, the crime, as well as any property obtained by or income generated from the sale, conversion or exchange of such property and any gain realized by such sale, conversion or exchange.”
Crucially for the purposes of this case, “crime” is defined in the Son of Sam Law as: “any felony defined in the penal law or any other chapter of the consolidated laws of the state.” (Executive Law § 632-a [1] [a].)
B. “Crime” as Defined in the Son of Sam Law
Given Gravano’s admitted criminal exploits, which include involvement in numerous murders, his commission of a “crime” for purposes of the Son of Sam Law would appear to be beyond question. However, the statute as currently written does not reach the profits of persons, like Gravano, who are convicted of Federal crimes.
The Son of Sam Law reaches only “profits from the crime” committed by a person “charged or convicted” of “any felony defined in the penal law or any other chapter of the consolidated *783 laws of the state.” (Executive Law § 632-a [1] [a].) Gravano is no longer “charged” with any crime. The complaint alleges that he was convicted when he pleaded guilty to racketeering charges pursuant to the Federal Racketeer Influenced and Corrupt Organizations (RICO) law (18 USC § 1962 [c]; § 3551). Thus Gravano’s conviction was or crimes which are not “defined in the penal law of the state.” (Executive Law § 632-a [1], [a].)
The Board argues that a Federal conviction, if based on facts that would give rise to a State criminal prosecution, constitutes a “crime” as defined by the Penal Law. Plaintiff alleges that Gravano’s conviction on Federal RICO charges is the same as a conviction under New York State’s RICO law. It also argues that Gravano admitted to committing murders as “predicate acts” for purposes of his RICO conviction, and that murder is similarly “defined” in the State’s Penal Law.
The word “defined” in Executive Law § 632-a (1) (a) cannot carry the freight that plaintiff seeks to assign to it. Reading this section in context, and comparing it with other statutes that are triggered by criminal convictions, it is clear that “defined” refers to a criminal charge or conviction pursuant to the Penal Law of New York State, and not to charges or convictions based on the criminal laws of other jurisdictions.
Plaintiffs reading is contradicted by another section in the Executive Law. Section 632-a (1) (a) is part of article 22 of the Executive Law, which governs the activities of the Crime Victims Board. Section 621 (3) of article 22 contains a definition of “crime” that is broader than the definition contained in section 632-a (1) (a), a definition that would embrace Gravano’s conviction: “3. ‘Crime’ shall mean (a) an act committed in New York state which would, if committed by a mentally competent criminally responsible adult, who has no legal exemption or defense, constitute a crime as defined in and proscribed by law”.
The presence of this broader definition of crime in the same article as section 632-a (1) (a)’s definition of crime indicates that the Legislature intended a narrower definition — one that does not include Federal crimes — to obtain for purposes of activating the Son of Sam Law. It may have been that the Legislature intended to cede this area to the Federal Son of Sam Law (18 USC § 3681). While the Federal statute is not a mirror image of the State’s Son of Sam Law (for example, it may only be invoked during the course of the criminal proceeding) it does provide for compensation for crime victims when a criminal attempts to profit from the recitation of his crimes in books, movies or other media. (18 USC § 3681 [a].)
*784 A second indication that the Legislature did not intend the revised Son of Sam Law to be triggered by Federal crimes is that the initial Son of Sam Law contained a broader definition of crime that would have embraced Gravano’s conviction. The pre-1992 version of the Son of Sam Law broadly defined “person convicted of a crime” to include “any person convicted of a crime in this state either by entry of a plea of guilty or by conviction after trial”. (Executive Law former § 632-a [10] [b].) The change in the definition of “crime” in the revised Son of Sam Law cannot be traced to anything required by the holding of United States Supreme Court in Simon & Schuster (502 US 105, supra). Accordingly, the Legislature’s failure to retain this language and its enactment of a narrower definition give rise to the inference that it meant to narrow the category of crimes within the ambit of the Son of Sam Law. (See, People v Korkala, 99 AD2d 161, 165-166.)
A third indication that the Son of Sam Law encompasses only persons charged with or convicted of State law offenses is the treatment that similar language has received in other statutes. The State’s forfeiture law contains definitions of pre- and postconviction forfeiture crimes that both describe “crimes” as those “defined” in the Penal Law or other chapter of the consolidated laws of the State — a formulation identical to the one that appears in the Son of Sam Law. (Compare, CPLR 1310 [5], [6], with Executive Law § 632-a [1] [a].)
However, with respect to preconviction forfeiture offenses the Legislature added an additional provision designed to capture convictions from other jurisdictions. CPLR 1311 (1) (b) provides that the commission of a preconviction forfeiture crime may be proved, even in the absence of a “conviction”, by a showing of “clear and convincing evidence” of the commission of the crime.
In Hendley v Clark (147 AD2d 347) the Third Department relied on the language in CPLR 1311 (1) (b) in using a Federal guilty plea as a basis for a clear and convincing showing of the commission of the offense. The Third Department’s citation to CPLR 1311 (1) (b) in Hendley would have been unnecessary if “defined in * * * the penal law” meant, as plaintiff urges herein, any conviction from any jurisdiction so long as the underlying offense contains the elements of a crime set forth in a section of New York’s penal code. (Supra; see also, Morgenthau v Clifford, 157 Misc 2d 331, 336, n 3 [CPLR 1310 (5)’s definition of postconviction forfeiture crimes as “any felony defined in the penal law” does not include Federal crimes].)
*785 Finally, there are other laws by which the Legislature has clearly and expressly stated when a conviction from another jurisdiction is to be deemed a “crime”. For example, Judiciary Law § 90 (4) (a), which provides for automatic disbarment of an attorney upon conviction of certain crimes, defines such crimes as follows: “the term felony shall mean any criminal offense classified as a felony under the laws of this state or any criminal offense committed in any other state, district, or territory of the United States and classified as a felony therein which if committed within this state, would constitute a felony in this state.” (Judiciary Law § 90 [4] [e].)
Similarly, in the context of New York’s sentencing laws that apply to repeat offenders, the Legislature expressly recognizes as predicate convictions any convictions obtained “in any other jurisdiction of an offense which includes all of the essential elements of any such felony for which a sentence to a term of imprisonment in excess of one year * * * was authorized”. (Penal Law § 70.04 [1] [b] [i].)
To hold, as this court does, that Gravano was not convicted of a “crime” as that term is defined in the Son of Sam Law does not render the statute “futile” or “absurd”. (Cf., Matter of Ganley v Giuliani, 171 Misc 2d 654.) The statute remains applicable to persons charged with or convicted of State law offenses. Persons convicted of Federal crimes remain subject to the Federal Son of Sam Law.
This court may not ignore a statute’s language in an effort to divine or construct a legislative intent that could easily have been articulated by the Legislature when it drafted the statute. When the Legislature has in the past intended for statutory consequences to flow upon criminal convictions from other jurisdictions, it has had no trouble embodying that intent in statutory language. It included such language in the original Son of Sam Law; it did not include such language in the revised statute. The court will not exceed its authority by reading this language into the statute. (See, Modell & Co. v Minister of Refm. Prot. Dutch Church, 68 NY2d 456, 462-463.)
C. Defendants’ Privity with Gravano
A separate ground for dismissing the complaint with respect to all the defendants except Maas, TJM and ICM is that none of the defendants save these three are alleged to have entered into an agreement with Gravano. The complaint alleges that Maas, TJM and/or ICM were conduits for all payments to Gravano.
*786 The duty to provide notice of agreements involving “profits from a crime” under the Son of Sam Law applies only to a person or entity who “contracts for, pays, or agrees to pay, any profit from a crime, as defined in subdivision one of this section, to a person charged with or convicted of that crime”. (Executive Law § 632-a [2] [a].) None of the defendants except Maas, TJM and ICM are alleged to have agreements with Gravano. The current version of the Son of Sam Law, unlike its predecessor, does not reach agreements with the representative or assignee of a person charged with or convicted of a crime. The Board admits that it has submitted proposed legislation to restore such language to the statute. Until the statute is amended, the Son of Sam Law imposes a duty only on persons or entities who are alleged to have dealt directly with a person charged with or convicted of a crime as defined in the statute.
The Board’s attempt to bring Gravano, the HarperCollins defendants, and Fox within the ambit of the statute by alleging that they entered into a “scheme” to circumvent the statute does not state a cause of action. The Son of Sam Law imposes certain obligations on certain parties to report contracts and agreements with persons charged with or convicted of a crime. As the statute’s requirements do not apply to all parties that have anything to do with a criminal’s marketing of his story, defendants did not violate the Son of Sam Law by structuring their deals to avoid the statute’s reach. (See, Commissioner v First Sec. Bank of Utah, 405 US 394, 398-399, n 4 [taxpayers are free to structure their affairs to minimize taxes]; Herman v Siegmund, 102 AD2d 810, 811 [law permits incorporation of a business for the very purpose of escaping personal liability].)
D. Defendants’ Remaining Arguments
Given the holdings set forth above, the court does not reach defendants’ remaining arguments in support of their motions to dismiss.
CONCLUSION
Defendants’ motions to dismiss the complaint are granted.

. Simon & Schuster v Members of N. Y. State Crime Victims Bd., 502 US 105.

. The Son of Sam Law is of course named for David Berkowitz, who killed six persons and injured seven others in a series of shootings in 1976-1977 in New York City. Berkowitz signed notes to the media as “Son of Sam”. Although the law’s initial impetus was to prevent Berkowitz from profiting from the sale of his story, the statute was never used against him because he was found incompetent to stand trial. (See, Liebeskind, Back to Basics for Victims: Striking Son of Sam Laws in Favor of an Amended Restitutionary Scheme, 1994 Ann Surv Am L 29, 43-44; Note, New York’s Son of Sam Law: Alive and Well Today, 11 Touro L Rev 629, 634.)